APACHE CORPORATION, Appellant

v.

DYNEGY MIDSTREAM SERVICES, LIMITED PARTNERSHIP and Versado Gas Processors, LLC, Appellees.

No. 14–05–00010–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 7, 2006.

Kenneth Edward McNeil, Christopher W. Barnes, Geoffrey L. Harrison, Jennifer R. Tillison, Roger D. Townsend, Houston, for appellants.

Christopher B. Dove, Gregory F. Burch, John B. Hall, Houston, for appellees.

Panel consists of Chief Justice HEDGES, Justice ANDERSON, and Senior Chief Justice MURPHY.*

## OPINION ON REHEARING

JOHN S. ANDERSON, Justice.

This is a commercial damages case involving natural gas contracts.

This appeal arises from disagreements as to the interpretation of several gas contracts between the predecessors of Apache Corporation and Versado Gas Processors. The disputes were submitted to a jury, and Apache received favorable answers to the most critical questions addressed by the jury. However, the trial court granted a judgment notwithstanding the verdict. In six issues, Apache contends the trial court erred in rendering judgment because legally sufficient evidence supported its breach of contract and unfair trade practice claims. Dynegy and Versado (collectively "Versado") filed a cross-appeal in which they complain the trial court erred in awarding Apache a declaratory judgment for future field condensate payments. In both appeals, the parties argue they are entitled to recover attorney's fees as the prevailing party. We modify the judgment, affirm as modified, and remand the issue of Versado's attorney's fees.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Apache is a producer of natural gas and owns several oil and gas wells in West Texas and New Mexico. Title to the gas Apache produces is transferred to Versado at the wellhead. Versado then transports the gas through its pipeline to a processing plant. At the plant, the liquid hydrocarbons are stripped out of the gas and are sold as fuel. The remaining dry residue gas is also sold by Versado. Although Versado is the party who contracted with

* Senior Chief Justice Paul C. Murphy sitting by assignment.

Apache to process the gas, it has no employees; therefore, Dynegy employees operate the gas processing plants. Versado agreed to pay Apache a percentage of the proceeds it realizes from the sale of the liquid hydrocarbons and the residue gas. The dispute between the parties arose after Apache audited Versado's payments and discovered irregularities in the payments for gas and liquids to Apache.

Versado owns several processing plants at issue in this case. The Eunice North and South Plants were originally built by Texaco in 1936. The Eunice Middle Plant was built in 1948 by Gulf Oil, and the Monument Plant was built in 1936 by Amerada Hess, which was later purchased by Warren Petroleum. Those companies are the original parties to the contracts at issue. Through a series of mergers and acquisitions, Apache and Versado are the current parties to the contracts.

Apache sued Versado for breach of contract and for violations of the New Mexico Unfair Practices Act. The jury found that Versado breached the contracts and engaged in unfair or deceptive trade practices. The jury further found that Apache neither wrongfully retained money from Versado, nor failed to comply with the contracts. Finally, the jury found that Versado charged Apache excessive marketing fees. For the breach of contract and unfair practices violations, the jury awarded $1,508,674 in damages to Apache. For the claim of excessive marketing fees, the jury awarded $158,000 in damages.

Following the jury's verdict, Versado filed a motion for judgment notwithstanding the verdict, which the trial court granted in part. In its judgment, the trial court ordered that Apache take nothing on its contract and unfair practices claims and that Versado take nothing on its counterclaims. The trial court further entered a declaratory judgment on eleven of the contracts declaring that Apache was entitled to payments for condensate from the North and South Eunice locations from the date of Versado's last condensate payment to Apache through the date the contracts terminate. The trial court awarded Apache $75,000 in attorney's fees for its declaratory judgment action, and affirmed a partial summary judgment in which it found Versado had not breached the contracts regarding interaffiliate transfers. Both parties appealed.

In six issues, Apache contends the trial court erred in entering judgment notwithstanding the verdict because the evidence supports both the trial court's finding that the contracts were ambiguous and the jury's verdict interpreting the contracts. Apache further seeks attorney's fees of $775,000 through trial and $100,000 through appeal. In a cross-appeal, Versado contends the trial court erred in entering a declaratory judgment awarding Apache future condensate payments because neither the evidence, nor the jury's verdict, supports the declaratory judgment. Versado also seeks remand to determine the amount of attorney's fees it should recover.

## II. STANDARD OF REVIEW FOR JUDGMENT NOTWITHSTANDING THE VERDICT

■ In order to uphold a trial court's judgment notwithstanding the verdict, an appellate court must determine that no evidence supports the jury's findings. *Mancorp v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990). The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005). Under the properly applied scope of review, appellate courts must view the evidence in the light most favorable to the verdict,

crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not disregard such evidence. *Id.* at 807.

■ A judgment notwithstanding the verdict is proper in the following circumstances: (1) a defect in the opponent's pleadings makes the pleadings insufficient to support a judgment, (2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law, or (3) the evidence offered on a cause of action is insufficient to raise an issue of fact. *Sherman v. Elkowitz*, 130 S.W.3d 316, 319 (Tex.App.-Houston [14th Dist.] 2004, no pet.). If there is sufficient evidence to support the jury's findings, the judgment notwithstanding the verdict should be reversed. *Hester v. Friedkin Companies, Inc.*, 132 S.W.3d 100, 104 (Tex. App.-Houston [14th Dist.] 2004, pet. denied).

### III. BREACH OF CONTRACT— UNACCOUNTED-FOR GAS

The plants now owned by Versado process natural gas supplied by Apache. When the gas enters Versado's pipeline, it is under relatively low pressure. As the gas moves through the pipeline, the pressure is gradually increased so the gas can reach the plant. At the plant, the gas is compressed further to extract liquids. During this process, the quantity of gas received by Versado from Apache is reduced by the amounts of gas used for fuel, lost through leaks, and flared during processing.

The dispute between Apache and Versado arose after Apache conducted a routine audit and discovered that Versado included a category for "unaccounted-for gas" in its calculations of residue gas. Eight of the contracts define residue gas as "the quantity of Gas which remains after the Liquid Hydrocarbon Products are extracted ... after the allocated volumes of Plant fuel, field and Plant compressor fuel, Plant and field losses, and flare are deducted." In five of the contracts, the payment provision states that "Seller hereby conveys to Buyer free of cost to Buyer, title to the Gas consumed as fuel in the operation of the Plant and Gathering System, and all Gas which is flared, leaked or otherwise lost in the operation of the Plant and Gathering System[.]" The remaining five contracts define residue gas as "any Gas which is discharged in the form of Gas from the Plant before or after processing or sold as fuel from Buyer's Gathering System." As payment for any residue gas, Apache receives a percentage of the "net proceeds f.o.b. the Plant tailgate."

Apache sued Versado on the grounds that while the contracts permit Versado to deduct lost gas, fuel gas, and flared gas for the purpose of determining the quantity of residue gas, the contracts do not permit a deduction for unaccounted-for gas.[1] At trial, Versado argued the unaccounted-for gas was actually lost gas and the percentages of unaccounted-for gas were high because Versado's pipeline was aging and it was impossible to efficiently check leaks and measure all gas lost from those leaks. Versado also offered evidence that the measurement at the wellhead was not consistently accurate, and they were often required to flare more gas than usual because they were repairing leaks in the pipeline. The jury determined that Versa-

---

1. In two contracts not at issue here, unaccounted-for gas is listed as a deduction. Gas producers and processors may agree to include a deduction for unaccounted-for gas when determining the volume of residue gas for which payment is made. Because the contracts at issue here do not facially permit a deduction for unaccounted-for gas, the issue of the contractual legitimacy of this deduction was an issue for the jury.

do breached the contracts by failing to pay Apache $1,508,674 for unaccounted-for gas. The jury further found that by failing to pay for unaccounted-for gas, Versado engaged in unfair practices under the laws of New Mexico. Versado moved for judgment notwithstanding the verdict. The trial court agreed with Versado and disregarded the jury's verdict that Versado breached the contracts with Apache by failing to pay Apache for unaccounted-for gas and engaged in unfair practices.

## A. Legal Sufficiency of the Evidence to Support the Answer to Jury Question No. 1.

■ In its second issue, Apache argues that because Apache presented legally sufficient evidence that Versado failed to comply with the contracts by failing to pay for unaccounted-for gas, the judgment notwithstanding the verdict should be reversed. The essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach. *Aguiar v. Segal*, 167 S.W.3d 443, 449 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). Although Apache claims the contracts are ambiguous, we find as a matter of law they are not ambiguous. If a contract can be given a certain or definite legal meaning or interpretation, then it is not ambiguous. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). In determining the issue of ambiguity, our primary concern is to ascertain and give effect to the intentions of the parties as expressed in the instrument. *GTE Mobilnet of S. Tex. Ltd. Partnership v. Telecell Cellular, Inc.*, 955 S.W.2d 286, 289 (Tex.App.-Houston [1st Dist.] 1997, writ denied). The rule in Texas is that an ambiguity does not exist simply because the parties advance

conflicting interpretations of the contract. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex.1994). The plain language of the contracts provides that Apache is paid for residue gas as a percentage of the "net proceeds f.o.b. the Plant tailgate." None of the contracts at issue permits Versado to deduct unaccounted-for gas for purposes of calculating residue gas. Because the gas contracts are unambiguous as a matter of law, jury question one was properly limited to the fact question of the legitimacy of Versado's deduction for unaccounted-for gas.

■ Jury Question No. 1 asked, "Did Versado fail to comply with each of the Contracts by failing to pay Apache for unaccounted-for gas?" The jury answered, "yes." Question No. 3 asked the jury "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Apache for its damages, if any, that resulted from Versado's failure to comply with the Contracts?" The jury answered, "$1,508,674.00." By granting the motion for judgment notwithstanding the verdict, the trial court found no evidence to support those findings. Therefore, if some evidence supports the jury's answers to those questions, we must reverse the trial court's judgment. *See Hester*, 132 S.W.3d at 104.

Viewed in the light most favorable to the verdict, the evidence shows Versado paid Apache for a percentage of the residue gas minus gas used as fuel, flared, lost, and unaccounted-for. Versado presented evidence that it did not breach the contracts because the unaccounted-for gas simply fell into one of the other three categories of deductions, but was incapable of measurement. Apache presented conflicting evidence that the amounts of unaccounted-for gas listed in Versado's records could not reasonably be considered as lost,

fuel, and flared. Versado points out that five of the contracts do not include the "lost, fuel, and flared" language when referencing residue gas. Versado argues that those contracts should be segregated from the remaining contracts and should be treated differently. This contention is contrary to the evidence at trial. The evidence showed that the standard practice in the industry is that the processor routinely pays the producer-seller the seller's percentage of gas delivered at the wellhead, minus deductions for gas used as fuel, flare, and lost gas. John Bower, an expert who testified for Apache, testified that the contracts comported with this industry standard. Denton Kernodle, Apache's audit manager, testified that while five of the older contracts did not reference deductions to be taken from residue gas, nothing in those contracts permitted Versado to deduct unaccounted-for gas from its percentage payments. Versado did not contradict Kernodle's testimony on those contracts. Further, Apache, in presenting evidence of its damages, referred to Versado's settlement statements and material balance statements, which deducted fueled, flared, lost, and unaccounted-for gas without reference to which contract it applied the deductions.

By deducting unaccounted-for gas, an action not permitted by the contracts, from the percentage of payment owed to Apache, Versado breached the unambiguous terms of the contracts. Apache presented further evidence that Versado failed to pay Apache $1,508,674 for residue gas Versado categorized as unaccounted-for. After reviewing the evidence in the light most favorable to the jury's findings, we find there is legally sufficient evidence to support the jury finding that Versado breached the contracts, and that Apache suffered damages for the breach. Because legally sufficient evidence supports the jury's findings, the trial court erred in disregarding its verdict. Apache's second issue is sustained.

## B. Amicus Curiae Arguments

The Texas Pipeline Association filed an amicus curiae brief in which it alleges that its members have contracts similar to those at issue in this proceeding and that the contracts could be affected by the outcome of this case. The Association contends it is "concerned with the premise that a party can acquire a producer's interest in a gas purchase contract executed many years prior to the acquisition, and attempt to cause a retroactive interpretation of that contract based on the allegation that the contract does not comport with the parties' intent." In this opinion, we do not attempt to "retroactively interpret" the contract at all. This is a simple breach of contract case. The contract requires Versado to pay a percentage of the proceeds of all gas that is not lost, flared, or leaked. Because Versado impermissibly deducted additional volume for unaccounted-for gas, it breached the contract, and must pay damages for the breach. If the TPA members comply with the terms of their contracts, this opinion will not affect interpretation of the Pipeline Association's members' contracts.

## C. New Mexico UnFair Practices Act

Because we have sustained Apache's second issue, we need not address Apache's first issue challenging the judgment on the New Mexico Unfair Practices Act, or its fifth issue concerning Versado's failure to comply in good faith.

## IV. Marketing Fees

■ In its third issue, Apache contends the trial court erred in rendering judgment notwithstanding the verdict because legally sufficient evidence supports the

jury's verdict in favor of Apache's claim for breach of contract regarding an excessive marketing fee. The jury found that Versado failed to comply with eleven of the contracts by charging Apache excessive marketing fees of $158,000. Apache based its claim for excessive marketing fees on the portion of the contracts that address payment for liquid hydrocarbons. Apache contends Versado sold liquid hydrocarbons to its affiliates at an artificially depressed price because it deducted a marketing fee from the weighted average sales price. The contracts permit Versado to deduct costs from the sales price of liquid hydrocarbons. Because Versado sold the liquid hydrocarbons to its affiliates, Apache argues Versado incurred no marketing fee, so it should not have been permitted to deduct a fee from the sales price.

Question No. 17 in the court's charge asked, "Did Versado fail to comply with the Contracts by charging Apache excessive marketing fees?" The jury answered, "yes." We review the sufficiency of the evidence in light of the charge submitted. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001). There is no evidence in the record that Versado charged Apache a marketing fee. Apache's audit manager, Denton Kernodle, testified that Apache was not charged a marketing fee. He testified that Apache's complaint was that Versado paid a marketing fee to its affiliates. He admitted Apache is not a party to the contracts in which the fee is charged. Because the evidence does not support the jury's answer to Question No. 17, judgment notwithstanding the verdict is proper. Appellant's third issue is overruled.

## V. Interaffiliate Sales

In its fourth issue, Apache contends the trial court erred in granting partial summary judgment based on Apache's claim for breach of contract regarding interaffiliate sales. In its pleadings Apache claimed Versado engaged in sham transactions in which it sold residue gas at below market prices to its affiliates who, in turn, resold the gas for a higher price. Versado filed a motion for summary judgment claiming neither the contracts, nor the law, require it to sell Apache's products to unaffiliated third parties. The trial court granted partial summary judgment on Apache's claims that relate to interaffiliate sales of natural gas and natural gas liquids.

The movant for summary judgment has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). When deciding whether there is a disputed material fact issue precluding summary judgment, the appellate court must take as true all evidence favorable to the non-movant. *Id.* at 548–49. The reviewing court must indulge every reasonable inference in favor of the non-movant and resolve any doubts in its favor. *Id.* at 549.

The dispute over interaffiliate sales arises from the contracts that require Versado to pay Apache a percentage of the actual price it receives. Apache alleges Versado breached the contracts by selling gas to its affiliates and not obtaining the best possible price. In its motion for summary judgment, Versado alleged the contracts do not require it to sell to unaffiliated third parties, or to obtain the best possible price.

The plain language of the contracts does not support Apache's contention that Versado is required to sell to unaffiliated third parties or to obtain the best possible price for residue gas. Nothing in the contracts requires Versado to obtain the best price for its gas; rather, the contracts only require Versado to pay

Apache a percentage of proceeds. Apache alleges, however, that the Uniform Commercial Code (UCC) imposes on Versado the duty to perform the contract in good faith, which would require Versado to obtain the best price for the gas. *See* TEX. BUS. & COM.CODE ANN. § 1.304. The failure to act in good faith under the UCC, however, does not state an independent cause of action because the duty of good faith and fair dealing is aimed at making effective the agreement's promises. *N. Nat. Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 606–07 (Tex.1998). The UCC defines duties that grow out of specific contract terms and obligations. *Adolph Coors Co. v. Rodriguez*, 780 S.W.2d 477, 482 (Tex.App.-Corpus Christi 1989, writ denied) (construing former TEX. BUS. & COM.CODE ANN. § 1.203 now recodified as TEX. BUS. & COM.CODE ANN. § 1.304). In the absence of a specific duty or obligation in the contract to which the good-faith standard can be tied, the obligation of good faith under the UCC will not support a claim for damages. *Fetter v. Wells Fargo Bank Texas, N.A.*, 110 S.W.3d 683, 689 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

Because the contracts do not require Versado to market gas to non-affiliates, the good faith standard of the UCC cannot be tied to an obligation in the contract. Because Versado is not contractually or legally obligated to market Apache's gas to third parties or to obtain the best possible price, summary judgment was appropriate. Apache's fourth issue is overruled.

## VI. LIQUID HYDROCARBONS

Versado filed a cross-appeal challenging the portion of the trial court's judgment in which the court declared Apache was entitled to future payment for liquid condensate resulting from the operation of the compressors at the locations formerly known as the North and South Eunice Plants.

## A. Declaratory Judgment on Future Payments

Eleven of the contracts at issue permit Apache to be paid for a percentage of the liquid hydrocarbon products processed at Versado's plants. The contracts provide that Versado owns "all drip, condensate, or scrubber oil collected prior to the first stage of compression within the plant." When the contracts were drafted, gas was processed at three plants known as the North, South, and Middle Eunice plants. In 2000, Versado consolidated its processing facility in the Eunice gas fields. The North and South Eunice plants were converted to booster stations, which are used to compress the gas and move it along the gathering system to the Middle Eunice plant. Versado now operates three processing plants: Eunice, Monument, and Saunders.

At trial, both Versado and Apache claimed they were entitled to be paid for the liquids compressed at the North and South Eunice booster stations. Apache alleged the contracts unambiguously provided for payment of liquid hydrocarbons processed through compression at Versado's plants. Versado alleged that the North and South Eunice locations were no longer plants, but booster stations, so the liquid hydrocarbons were field condensate, and, under the contracts, were owned by Versado.

In its first issue, Versado argues the trial court erred in granting Apache declaratory relief for future payments for liquid condensate collected at and resulting from the operation of the compressors at the locations now known as the North and South Eunice booster stations. A declaratory judgment is one that declares the rights, status, or other legal relations of

the parties. TEX. CIV. PRAC. & REM.CODE ANN. § 37.003. In a declaratory judgment action, the party asserting an affirmative claim bears the burden of proving its allegations. *Russell v. City of Bryan,* 919 S.W.2d 698, 704 (Tex.App.-Houston [14th Dist.] 1996, writ denied). Declaratory judgments are reviewed under the same standards as other judgments or decrees. TEX. CIV. PRAC. & REM.CODE ANN. § 37.010.

■■■ Resolution of Versado's issue requires us to determine whether the contracts are ambiguous. If a written contract is worded so that it can be given a definite or certain legal meaning, then it is not ambiguous. *Nat'l Union Fire Ins. Co.,* 907 S.W.2d at 520. In each of the contracts at issue, "liquid hydrocarbon products" are defined as all hydrocarbons that are delivered to, and processed, or extracted at the Plant. "Plant" is defined as the facility used to process gas, or the facility in which gas is processed. The contracts unambiguously provide that Apache receives payment only for liquid hydrocarbons "saved and sold at the Plant." The record reflects that the North and South Eunice facilities no longer fall under the contract definition of "plant." Those facilities are now booster stations that provide compression to move the gas toward the plant where it is processed. The contracts further provide that Versado owns "all drip, condensate, or scrubber oil collected prior to the first stage of compression within the plant." Therefore, under the contracts, Versado owns all drip, condensate, or scrubber oil that is collected at the North and South Eunice stations. The plain language of the contracts does not support the trial court's declaratory judgment. Versado's first issue on cross-appeal is sustained.

**B. Versado's Condensate Overpayment**

■■■ During its audit of Versado's processing, Apache discovered that liquid hydrocarbons had been removed from the North and South Eunice booster stations without payment to Apache. Versado explained that the liquid from those stations was transported by truck to the Middle Eunice plant where it was mixed with liquids from the plant. Because Versado could not segregate what liquid had been removed from the North and South Eunice stations, it voluntarily paid Apache $338,599.47. After Apache filed its lawsuit, Versado filed a counterclaim seeking reimbursement for the payment because it alleged the liquid removed from the North and South Eunice stations was field condensate; therefore, Apache was unjustly enriched by the payment.

Versado requested, and the trial court submitted, jury issues on Versado's claim for reimbursement of the $338,599.47 payment. In Question No. 15, the jury was asked whether Apache wrongfully retained money from Versado. The jury was further instructed that "the retention of another's money is wrongful if the money was obtained through a mistake of fact," and that "money voluntarily paid with full knowledge of the facts and without fraud or duress cannot be recovered, although it was paid upon a claim without foundation." The jury answered that Apache did not wrongfully retain the payment. Versado argues that because the contracts do not provide for payment of field condensate, the evidence is insufficient to support the jury's answer to Question No. 15.

■■■ Apache argues, however, that the evidence supports the jury's answer because Versado voluntarily paid in the absence of fraud or duress. Money voluntarily paid with full knowledge of all the facts, in the absence of fraud, deception, duress, or compulsion, cannot be recovered merely because the party at the time of payment was ignorant of or misunderstood

the law as to his liability. *Pennell v. United Ins. Co.*, 150 Tex. 541, 243 S.W.2d 572, 576 (1951). The "voluntary-payment rule" is a defense to claims asserting unjust enrichment, that is, when a plaintiff sues for restitution claiming a payment constitutes unjust enrichment, a defendant may respond with the voluntary-payment rule as a defense. *BMG Direct Marketing, Inc. v. Peake*, 178 S.W.3d 763, 768 (Tex. 2005). The supreme court has recognized the following underlying policy when applying the voluntary-payment rule:

> [A] party who pays a claim is deemed to have made his own decision that it is justly due. If he thinks otherwise, he should resist. He should not pay out his money, leading the other party to act as though the matter were closed, and then be in a position to change his mind and invoke the aid of the courts to get it back.

*Id.* at 768–69 (*quoting R.G. McClung Cotton Co. v. Cotton Concentration Co.*, 479 S.W.2d 733, 743 (Tex.Civ.App.-Dallas 1972, writ ref'd n.r.e.)).

In this case, the record reflects that Versado paid Apache because at the time of the payment, Versado did not have the ability to segregate the source of the liquids coming into the plant. Clark White, the Permian Basin Region manager for Dynegy, testified that at the time the payment was made Versado could not adequately separate the drips that came in from the field from the condensate that came into the first stage suction scrubber in the plant. He testified that, "It all came into a common tank and we couldn't adequately distinguish which was which. Therefore, we just—we paid everything." In the settlement letter that accompanied Versado's payment, Versado stated that the payment was larger than future payments would be, but Versado did not state that it made the payment under duress or protest, or that the payment was obtained through fraud or coercion.

At oral argument, Versado argued the voluntary-payment defense was not available to Apache because this is a breach of contract action. In its counter-claim, however, Versado asserted a cause of action for unjust enrichment, a claim for which the voluntary-payment defense is available. Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory, such as unjust enrichment. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex.2000). There are, however, exceptions to this general rule. A claim for unjust enrichment may be had where overpayment was made under a valid contract. *See Southwestern Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 469 (Tex.1998). Here, Versado asserted a permissible counter-claim for unjust enrichment because Versado alleged it overpaid under the contract. Therefore, Apache could assert the voluntary-payment rule as a defense to Versado's claim of unjust enrichment. The evidence is sufficient to support the jury's verdict that Apache did not wrongfully retain the money because Versado voluntarily made the payment. Versado's second issue is overruled.

## VII. ATTORNEYS' FEES

### A. Apache's Attorneys' Fees

In its sixth issue, Apache contends the trial court erred in awarding Apache only $75,000 in attorneys' fees because the parties stipulated that Apache's attorneys' fees would be $775,000. Prior to trial, the parties entered into a stipulation in which they stipulated and agreed that the total amount of Apache's reasonable and necessary attorneys' fees from the inception of the lawsuit to the end of trial was $775,000. The parties further agreed that in the

event one or both of the parties filed an appeal with an intermediate appellate court, the attorneys' fees would be an additional $50,000 and in the event either or both parties filed a petition for review in the Texas Supreme Court, the fees would be an additional $25,000 plus another $25,000 if the supreme court requested briefing on the merits.

Apache argues it is entitled to all of the stipulated attorneys' fees if this court finds Apache should prevail on the breach of contract claim. If a party prevails on its breach of contract claim and recovers damages, it is entitled to attorneys' fees. *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex.1997); TEX. CIV. PRAC. & REM.CODE ANN. § 38.001. Thus, attorneys' fees under section 38.001 of the Texas Civil Practice and Remedies Code are mandatory. *Bocquet v. Herring,* 972 S.W.2d 19, 20 (Tex.1998). Versado contends that because Apache failed to segregate its attorneys' fees, Apache is not entitled to any fees. A failure to segregate attorneys' fees in a case containing multiple causes of action, only some of which entitle the recovery of attorneys' fees, can result in the recovery of zero attorneys' fees. *Green Int'l, Inc. v. Solis,* 951 S.W.2d at 389. In this case, however, Versado did not object to Apache's failure to segregate fees. If no one objects to the fact that the attorneys' fees are not segregated as to specific claims, the objection is waived. *Id.* Because we have determined Apache prevails on its breach of contract claim, we find Apache is entitled to the stipulated attorneys' fees. Apache's sixth issue is sustained.

**B. Versado's Attorneys' Fees**

In its cross-appeal, Versado argues this court should remand to the trial court to determine what fees Versado can recover for its success on the declaratory judgment. Under the Declaratory Judgments Act, the trial court has discretion to award attorneys' fees subject to the requirements that any fees be reasonable and necessary and that the fees be equitable and just. *Bocquet,* 972 S.W.2d at 21. Where an appellate court finds the issue of attorneys' fees was not determined in the trial court, that issue may be severed and remanded to the trial court for a determination of reasonable and proper attorneys' fees. *A.V.I. Inc. v. Heathington,* 842 S.W.2d 712, 718 (Tex.App.-Amarillo 1992, writ denied). Because Versado has prevailed on appeal on the declaratory judgment action, we remand to the trial court for consideration of Versado's attorney's fees.

**VIII. INTEREST**

Apache filed a motion for rehearing in which it contends it is entitled to prejudgment and post-judgment interest. We agree. A prevailing party receives prejudgment interest as a matter of course. *Baker Hughes Oilfield Operations, Inc. v. Hennig Prod. Co.,* 164 S.W.3d 438, 447 (Tex.App.-Houston [14th Dist.] 2005, no pet.). Therefore, Apache is entitled to prejudgment interest from the date of filing of Apache's original petition on May 22, 2002, to the date of the trial court's judgment on November 23, 2004. *See* TEX. FIN.CODE ANN. § 304.104. Apache is further entitled to a statutory award of post-judgment interest. TEX. FIN.CODE ANN. § 304.002. Post-judgment interest on damages, prejudgment interest, and attorneys' fees runs from the date of the trial court's judgment on November 23, 2004, until paid. *See Thornal v. Cargill, Inc.,* 587 S.W.2d 384, 384–85 (Tex.1979). Post-judgment interest on appellate attorneys' fees, however, does not accrue until the appellate court issues its final judgment. *Protechnics Int'l, Inc. v. Tru–Tag Systems,*

*Inc.*, 843 S.W.2d 734, 736 (Tex.App.-Houston [14th Dist.] 1992, no writ).

## Conclusion

The judgment of the trial court is modified to reflect recovery for Apache of $1,508,674 under its breach of contract cause of action, and recovery of its stipulated attorneys' fees. The judgment is further modified to delete declaratory relief in favor of Apache on future payments for liquid hydrocarbons. The issue of Versado's attorney's fees on the declaratory judgment action is severed and remanded for determination under section 37.009 of the Civil Practice and Remedies Code. The judgment is modified to reflect that Apache recover $189,100.92 in prejudgment interest and post-judgment interest at the rate of five percent, compounded annually, as follows: (a) on the judgment, $2,472,774.92, from November 23, 2004 until paid; (b) on the attorneys' fees for appeal, $50,000, from the date of this court's final judgment until paid; (c) on the attorneys' fees for a petition for review to the Texas Supreme Court, $25,000 from the time the Supreme Court renders its final judgment until paid; and (d) on the attorneys' fees for briefs on the merits in the Supreme Court, $25,000, from the time when the Supreme Court renders its final judgment until paid. In all other aspects, the judgment of the trial court is affirmed.