Affirmed in Part, Reversed and Rendered in Part, and Memorandum Opinion
filed February 12, 2009








Affirmed in Part, Reversed and Rendered in Part, and
Memorandum Opinion filed February 12, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00535-CV

_______________

 

GARY PETERSON, Appellant/Cross-Appellee

 

V.

 

JAMES JANSEN AND VIKKI JANSEN,
Appellees/Cross-Appellants

                                                                                                                                               


On Appeal from the County Civil Court
at Law No. 1

Harris County, Texas

Trial Court Cause No. 866337

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

In this
case arising, in part, from a dispute among neighbors over the installation of
a drainage pipe, the trial court found in favor of appellant/cross-appellee,
Gary Peterson, on his claim for trespass and awarded him nominal damages of one
dollar and attorneys= fees of $10,000, plus $5,000 for each level of successful
appeal.[1]








The
trial court found in favor of appellees/cross-appellants, James Jansen and
Vikki Jansen, on their claims for nuisance and invasion of privacy, and for
Vikki on her claim for intentional infliction of emotional distress.  The court
awarded them $32,000 plus pre- and post-judgment interest.  The court found
against the Jansens on their claims for defamation of character and breach of
contract and against James on his claim for intentional infliction of emotional
distress.  The court also denied their request for attorneys= fees.[2]

Both
parties appealed.  Concluding the trial court correctly found for the Jansens
on their nuisance claim and against them on their breach-of-contract claim, we
affirm the award of $32,000 to the Jansens and denial of their attorneys= fees.  Concluding Peterson, as a
matter of law, did not assert or prove a claim for adverse possession, we
reverse the award of attorneys= fees and render judgment Peterson take nothing for attorneys= fees.[3]

I.  Factual and Procedural Background

The
Jansens purchased a home in a golf-course community in 2004.  Peterson lived
two houses down from the Jansens.  Dale Farber lived between the Jansens and
Peterson.  The Jansens=, Peterson=s, and Farber=s yards backed to the golf course and contained an eight-foot
utility and drainage easement running along the golf-course side of the
properties.








Beginning
in late 2004, the Jansens spent over $70,000 on home improvements, installing a
swimming pool and landscaping their yard.  Peterson called the constable on at
least two occasions in relation to the work the Jansens were doing on their
home.  Peterson also complained about a privacy fence the Jansens erected to
prevent Peterson from staring across Farber=s yard and into the Jansens= yard.  Before the Jansens installed
the privacy fence, Peterson had interrupted a conversation between James Jansen
and Farber by shouting obscenities at Jansen.  According to the Jansens,
Peterson also let his large dog antagonize their two smaller dogs.

The
Jansens= backyard was subject to flooding;
and, in the process of improving the backyard, the Jansens investigated a way
of diverting the water underground.  Eventually, they contracted with Ben
Dittman to install a six-inch PVC pipe under the utility and drainage
easement.  The pipe was to run under the easement on Jansens=, Farber=s, and Peterson=s properties.  Dittman was
responsible for obtaining the necessary permits and approvals.

Farber
gave James Jansen oral approval to run the pipe through the easement on Farber=s property.  James also discussed the
pipe with Peterson.  According to James, Peterson was concerned about the pipe
backing up and wanted James to sign a statement accepting responsibility for
any problems or liabilities with the pipe.

Six days
later, when Peterson had not heard from James, Peterson sent James a ACease & Desist Order.@  The same day, James attempted to
hand-deliver a signed statement to Peterson.  Peterson refused to take it,
saying AYou=re too late.  You=ve been served.@

Dittman
also met with Peterson.  According to Dittman, Peterson was agreeable to the
drain work and also wanted Dittman=s company to do drain work for him. 
Subsequently, however, Peterson called Dittman Ajust kind of out of the blue, and
began to cuss me out and tell me that I didn=t know who he was and that I didn=t know what he was going to be able to
do to me and all this other stuff.@

Work
began on the pipe.  At one point, James Janson observed Peterson trying to dig
it up.  Peterson placed a sign where golfers could see it.  Between a half
dozen and a dozen people mentioned the sign to the Jansens.  The sign read, AMr. Jansen=s encroachment.  6" PVC Pipe.@








Peterson
stood on his porch and in Farber=s yard and screamed obscenities at
James.  Peterson stood behind the Jansens= fence and took photographs into the
Jansens= yard and home.  According to James,
it was Acreepy . . . kind of like [Peterson=s] stalking us at times.@  James stopped his membership in the
Men=s Golf Association because he did not
want to be in an organization that supported Peterson and did not want to be
placed in a position of having to golf with him.

According
to Vikki Jansen, Peterson would stand at the back of their fence with his dog,
which acted aggressively toward the Jansens= dogs.  Vikki no longer left her dogs
unsupervised in the backyard.  As a result of Peterson=s taking photographs into her house,
Vikki kept her blinds closed and no longer enjoyed the view of the golf
course.  Vikki stopped playing with the Ladies Golf Association after Peterson
complained to the police about a group with whom Vikki was riding to the club
house after an evening golf game.

In June
2006, the Jansens sued Peterson.  They alleged defamation, nuisance, invasion
of privacy, intentional infliction of emotional distress, and breach of
contract.  They sought damages for past and future mental anguish, exemplary
damages, attorneys= fees under Civil Practice and Remedies Code section 38.001,
costs of court, and pre- and post-judgment interest.

Peterson
answered and counter-claimed.  He asserted a general denial, specially excepted
insofar as the Jansens might be seeking equitable relief in the form of a
temporary restraining order or temporary injunction, specially excepted to the
Jansens= failure to set forth an amount of damages
for each claim, and specially excepted to the breach-of-contract claim for
failure to identify the existence of a contract.  Peterson claimed for trespass
and encroachment, nuisance, and nuisance per se.  He sought reasonable rental
value of the property, loss-of-use damages, cost of restoring the land to its
original condition, removal of the encroachment, a permanent injunction,
attorneys= fees pursuant to Texas Civil Practice and Remedies Code sections 16.034
and 38.001, costs of court, and pre- and post-judgment interest.








Trial
was to the court.  The court found in favor of the Jansens on their nuisance
and invasion-of-privacy claims and for Vikki on her
intentional-infliction-of-emotional-distress claim.  It found against the
Jansens on their breach-of-contract claim and against James on his
intentional-infliction-of-emotional-distress claim.  It awarded them $32,000,
without segregating the award among claims.  It denied their request for attorneys= fees.  The court found in favor of
Peterson on his trespass claim.  It awarded him nominal damages of one dollar
and attorneys= fees pursuant to Texas Civil Practice and Remedies Code section 16.034. 
Both parties filed a notice of appeal.[4]

The
parties subsequently notified this court they had reached an agreement to
settle the issues on appeal and requested the appeal be abated for completion
of the settlement.  We granted the motion, but the settlement agreement was not
completed.  On an unopposed motion, we reinstated the appeal.

II.  Issues Presented and Standard of Review

In three
issues, Peterson challenges the legal and factual sufficiency of evidence to
support the trial court=s findings in favor of the Jansens on their claims for
invasion of privacy and nuisance and for Vikki on her claim for intentional
infliction of emotional distress.  In two issues, the Jansens argue (1) the
trial court Aerred@ in finding against them on their breach-of-contract claim, and (2) the
evidence was legally and factually insufficient to support an award of
attorneys= fees to Peterson under Texas Civil Practice and Remedies Code section
16.034.  Thus, all five issues concern the legal or factual sufficiency of the
evidence.








In a
non-jury trial, when the court does not enter findings of fact and conclusions
of law to support its ruling, all facts necessary to support the judgment are
implied.  See BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 795
(Tex. 2002); Zac Smith & Co. v. Otis Elevator Co., 734 S.W.2d 662,
666 (Tex. 1987).  Nevertheless, when, as here, the appellate record includes
the reporter=s and clerk=s records, implied findings are not conclusive, and a party
may challenge such findings on the basis of legal and factual sufficiency.  See
BMC Software, 83 S.W.3d at 795.

In
reviewing a trial court=s findings for legal and factual sufficiency of the evidence,
we apply the same standards we apply in reviewing evidence supporting a jury=s answer.  Catalina v. Blasdel,
881 S.W.2d 295, 297 (Tex. 1994).  When reviewing legal sufficiency of the
evidence, we review the evidence in the light most favorable to the challenged
finding and indulge every reasonable inference that would support it.  City
of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).  We credit favorable
evidence if a reasonable fact finder could, and we disregard contrary evidence
unless a reasonable fact finder could not.  Id. at 827.  The evidence is
legally sufficient if it would enable fair-minded people to reach the finding
under review.  Id.  An appellant attacking the legal sufficiency of
evidence supporting an adverse finding on which he had the burden of proof must
show on appeal that a contrary finding was established as a matter of law.  Croucher
v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983).

In
reviewing factual sufficiency of the evidence, we must consider and weigh all
the evidence and should set aside the judgment only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).  We may not
substitute our own judgment for that of the trier of fact even if we would have
reached a different result on the evidence.  Mar. Overseas Corp. v. Ellis,
971 S.W.2d 402, 407 (Tex. 1998).  Therefore, we will reverse only if the
overwhelming weight of the evidence indicates the trial court=s findings were clearly wrong and unjust. 
Id.

 








III.  Analysis

A.        Peterson=s Issues

In issue
one, Peterson challenges the legal and factual sufficiency of the evidence to
support a finding of intentional emotional distress for Vikki Jansen; in issue
two, to support a finding of invasion of privacy by intrusion on seclusion for
the Jansens; in issue three, to support a finding of private nuisance for the
Jansens.  We turn first to Peterson=s third issue,  Because we conclude
the evidence was legally and factually sufficient to support the trial court=s finding on the Jansens= nuisance claim and its award of
$32,000, we affirm the judgment in the Jansens= favor on nuisance and do not address
Peterson=s remaining issues.

AA nuisance is a condition which substantially interferes with
the use and enjoyment of land by causing unreasonable discomfort or annoyance
to persons of ordinary sensibilities attempting to use and enjoy it.@  GTE Mobilnet of S. Tex. Ltd. P=ship. v. Pascouet, 61 S.W.3d 599, 614 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).   The non-trespassory invasion constituting a nuisance may be
intentional or unintentional.  Bily v. Omni Equities, Inc., 731 S.W.2d
606, 611B12 (Tex. App.CHouston [14th Dist.] 1987, writ ref=d n.r.e.).  When the invasion is
intentional, liability depends on whether the invasion was unreasonable.  Id.
at 612 (citing Restatement (Second)
of Torts ' 822 and ' 833 cmt. b).   When the invasion is
unintentional, liability depends on whether the defendant=s conduct was negligent, reckless, or
abnormally dangerous.  Id. (citing Restatement
(Second) of Torts ' 822 and ' 833 cmt. b).

AA >nuisance in fact= is a condition that is a nuisance
because of its particular surroundings.@  GTE Mobilnet, 61 S.W.3d at
614.  There is no requirement of physical damage to the land.  See id.
at 615.








Thus, to
establish their claim for nuisance, the Jansens had to show (1) they had a
private interest in land; (2) Peterson interfered with or invaded that interest
by conduct that was (a) negligent, (b) intentional and unreasonable, or (c)
abnormal and out of place in its surroundings; (3) Peterson=s conduct resulted in a condition
that substantially interfered with the Jansens= private use and enjoyment of the
land; and (4) the nuisance caused injury to the Jansens.  See Burditt v.
Swenson, 17 Tex. 489, 502 (1856); Aguilar v. Trujillo, 162 S.W.3d
839, 850B51 (Tex. App.CEl Paso 2005, pet. denied). 

Peterson
does not specifically argue the evidence was insufficient on any of these four
elements.  Rather, as he does in issues one and two, Peterson relies in part on
stipulated findings of fact and conclusions of law, signed by the trial court
August 28, 2007, that Aall acts, omissions, and commissions that have proximately
caused any damages [the Jansens] sustained upon which an award was based that
were awarded or could have been awarded in this action were the result of
[Peterson=s] negligence.@[5]  As discussed above, however, nuisance does not
require an intentional act, but may result from negligence or recklessness.

Peterson
also argues the Jansens Acannot recover damages for mental anguish arising from a
nuisance caused by negligent conduct.@  See City of Tyler v. Likes,
962 S.W.2d 489, 494 (Tex. 1997) (ATexas does not recognize a general
legal duty to avoid negligently inflicting mental anguish.@).  There is, however, Aconsiderable authority . . . for the
proposition that a nuisance which impairs the comfortable enjoyment of real
property may give rise to damages for >annoyance and discomfiture.=@ Id. at 504.  Peterson
incorrectly assumes the Jansens sought, established, and were awarded only
mental anguish damages.








To the
contrary, the Jansens introduced evidence establishing damages for annoyance
and discomfiture.  James Peterson testified they moved to the golf-course
community in October 2004 and were Areally looking forward to enjoying@ it.  Photographs of the property
show the backyard bordering the golf course and affording an expansive view of
a section of the course.  Vikki Jansen testified they spent more than $70,000
on improvements to their home. The Jansens contend they erected an eight-foot
tall privacy fence along one side of the property, blocking about half of their
yard because of Peterson=s conduct.  Vikki Jansen kept the blinds closed and no longer
could enjoy the view.[6]  She also no
longer allowed her two small dogs to be in the yard without supervision.  She
testified she felt like a prisoner in her own home.  Her retirement home had Aended up being . . . a nightmare.@   Both Vikki and James stopped
participating in golfing activities.

The
Jansens moved into their home in October 2004.  Trial was the third week of 
May 2007.  The Jansens sought, and were awarded, damages of $1,000 per month
for thirty-two months.  The evidence was legally and factually sufficient to
support an award of $32,000 for loss of the comfortable enjoyment of their
property.  See GTE Mobilnet, 61 S.W.3d at 616B17 (concluding evidence was legally
and factually sufficient to support award of $180,000 for past loss of use and
enjoyment of property when husband and wife property owners testified bright
lights, noise, and viewing of their backyard by workers on 126-foot cellular
telephone tower resulted in their not using backyard as they used to, and wife
testified nuisance created by tower caused her distress, made her cry, and made
her not interested in living in the house anymore).








We
overrule Peterson=s third issue.  Because the Jansens= nuisance claim supports the trial
court=s award of $32,000, we do not address
Peterson=s first and second issues,
challenging the legal and factual sufficiency of the evidence to support the
claims for invasion of privacy and intentional infliction of emotional
distress.[7]

B.  The Jansens= Issues

Issue
one:  breach of contract.  In issue one, the Jansens argue the trial court Aerred@ by finding Peterson did not breach
his contract with the Jansens.  To be awarded attorneys= fees, the Jansens had to prevail on
this claim.  See Tex. Civ. Prac. & Rem. Code Ann. ' 38.001(8) (Vernon 2008).

In their
argument, the Jansens invoke the factual sufficiency standard of review.  See
Cain, 709 S.W.2d at 176.  In their prayer for relief, however, they request
rendition of judgment in their favor, the remedy when a party prevails on a
legal sufficiency challenge.  See Jordan v. Sava, Inc., 222 S.W.3d 840,
853 (Tex. App.CHouston [1st Dist.] 2007, no pet.) (stating, because appellant was
attacking legal sufficiency of adverse jury finding on which she had burden of
proof, she needed, for rendition, to demonstrate that evidence conclusively
established all facts in support of the issue, as a matter of law).  The
Jansens had the burden of proof on their breach-of-contract claim.  To be
entitled to rendition, they therefore must demonstrate the evidence
conclusively established each element of breach of contract.  See id.; see
also Croucher, 660 S.W.2d at 58.








The
essential elements of a breach-of-contract claim are (1) the existence of a
valid contract,  (2) the plaintiff performed or tendered performance,  (3) the
defendant breached the contract,  and (4) the plaintiff was damaged as a result
of the breach.  Apache Corp. v. Dynegy Midstream Servs., L.P., 214
S.W.3d 554, 560 (Tex. App.CHouston [14th Dist.] 2006, pet. granted).  To establish a
valid and enforceable contract, the Jansens were required to prove (1) an
offer, (2) an acceptance, (3) a meeting of the minds, (4) an expression of the
terms with sufficient certainty so that there is no doubt regarding the parties= intentions, and (5) consideration.  See
MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc., 179 S.W.3d 51,
61 (Tex. App.CSan Antonio 2005, pet. denied).

We
cannot conclude the evidence conclusively established the existence of a
contract.  The Jansens rely on James=s testimony (1) he met with Peterson
regarding the drain pipe, (2) Peterson was concerned only that James take
responsibility for any problems or liabilities related to the pipe, and (3)
Peterson said he would have no problem with the pipe so long as James provided
him a letter accepting responsibility.  In addition, the Jansens represent that
Peterson reduced the agreement in writing and sent it to the Jansens.

The
document to which the Jansens point, however, is a ACease & Desist Order,@ authored by Peterson.  In the AOrder,@ Peterson referred to the meeting six
days earlier with James and stated that he (Peterson) required a dual signature
document communicating that James would Aaccept liability for breakage,
leakage, [and] any damage cause[d] by any line problem . . . .@  Peterson also referred to James=s not having had any contact with
Peterson since the meeting.

James=s testimony, particularly combined
with the document purportedly evidencing an Aagreement@ on Peterson=s part, does not prove the existence
of a valid enforceable contract.  Additionally, Peterson unequivocally
testified that, at no time, did he have an agreement with James authorizing
James to install the drainage line.








The
evidence does not conclusively establish the Jansens= breach-of-contract claim.  Neither
was a finding against them on this claim so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust.  Whether viewed as a
challenge to the legal sufficiency of the evidence or to the factual
sufficiency of the evidence, or to both, the Jansens= first issue fails; and we therefore
overrule it.

Issue
two: Aadverse possession.@  In issue two, the Jansens argue the
evidence was legally and factually insufficient to support the trial court=s award of Peterson=s attorneys= fees pursuant to Texas Civil
Practice and Remedies Code section 16.034.  Section 16.034(a) provides:

In a suit for the possession of real property between a person claiming
under record title to the property and one claiming by adverse possession, if
the prevailing party recovers possession of the property from a person
unlawfully in actual possession, the court may award costs and reasonable
attorney=s fees to the prevailing party.

 

Id. ' 16.034(a) (Vernon 2002).  AAdverse possession@ refers to Aan actual and visible appropriation
of real property, commenced and continued under a claim of right that is
inconsistent with and is hostile to the claim of another person.@  Id. ' 16.021(1). 

Peterson
set forth a cause of action for trespass based on the Jansens= installation of the drain pipe in
the utility and drainage easement across the back of Peterson=s property.  The trial court found
there was a trespass to Peterson=s property resulting from the laying
of the pipe, found Peterson had not provided any probative evidence of damages,
and awarded Peterson nominal damages of one dollar for the trespass.  The court
then ruled:  AAs to [Peterson=s] claim for attorney=s fees based upon the trespass, which
they=re [sic] entitled because there were
damages that were found, I will now award attorney=s fees damages to [Peterson] in the
amount of $10,000.000 [sic], plus $5,000.00 for each of the four [sic] levels
of appeal.@








Neither
party, however, was claiming right to the site of the drain pipe by virtue of
adverse possession.  In none of their causes of action did the Jansens assert title
to the property at issue.[8]  Neither did
they defend on this ground.  As record owner of the property, Peterson, by
definition, would not be asserting an adverse-possession claim.  Instead,
Peterson was merely asserting a claim for the tort of trespass.  Attorneys= fees are not recoverable in tort
actions.  Acad. Corp. v. Interior Buildout & Turnkey Constr., Inc.,
21 S.W.3d 732, 743 (Tex. App.CHouston [14th Dist.] 2000, no pet.).

The
evidence was legally insufficient to support an award of attorneys= fees under Texas Civil Practice and
Remedies Code section 16.034.  Accordingly, we sustain the Jansens= second issue and render judgment
Peterson take nothing on his claim for attorneys= fees.

IV.  Conclusion

Having
sustained the Jansens= second issue, we reverse that part of the trial court=s judgment awarding Peterson his
attorneys= fees, and we render judgment Peterson take nothing for attorneys= fees.  We affirm the remainder of
the judgment insofar as it awarded monetary damages of $32,000 to the Jansens
and $1.00 to Peterson, granted a permanent injunction prohibiting all parties
from engaging in specified actions, granted Peterson the right to remove the
PVC pipe from his property, denied the Jansens= request for declaratory judgment,
and denied Peterson=s request for specific performance.[9]

 

 

/s/        Charles W. Seymore

Justice

 

Panel consists of Chief Justice
Hedges and Justices Anderson and Seymore.









[1]  The court awarded the fees under Texas Civil
Practice and Remedies Code section 16.034, applicable to suits in which one
party claims by adverse possession.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 16.034 (Vernon 2002).  In its judgment, the court
states, AIf any party should appeal the Court=s decision as to Defendant=s claim for adverse possession, then Plaintiffs shall
additionally pay $5,000.00 to Defendant for each of two levels of appeal, for a
total maximum amount of $10,000, conditioned on Defendant=s success as to its claim for adverse possession.@





[2] The judgment includes additional decrees not
challenged on appeal.





[3]  Because the dispositive issues are clearly settled
in law, we issue this memorandum opinion.  Tex. R. App. P. 47.4.





[4]  The Jansens requested findings of fact and
conclusions of law.  They did not, however, submit proposed findings and
conclusions.  The trial court did not file findings of fact and conclusions of
law, but neither party alleges error in this regard.





[5]  The Jansens allege Peterson breached the settlement
agreement that resulted in the stipulations.  They argue this court should
therefore disregard the stipulations.  Although the settlement agreement is
part of this court=s record, the documents supporting Peterson=s alleged breach are not.  We cannot consider this
documentation.  See Cherqui v. Westheimer St. Festival Corp., 116 S.W.3d
337, 342 n.2 (Tex. App.CHouston [14th Dist.] 2003, no pet.)  (A[W]e cannot consider documents attached as appendices
to briefs and must consider a case based upon the record filed.@).  However, as discussed above, even if one assumes
Peterson=s conduct was only negligent, that assumption does not
undermine a finding of nuisance on his part.





[6]  Vikki also testified she had seen a physician, who
prescribed Wellbutrin XL.  The trial court sustained Peterson=s objection that he had not been provided with medical
documentation or corroboration.  The trial court sustained the objection, but
the record is unclear regarding how much of the testimony the objection
covered.





[7]  Peterson Aprays
that this Court reverse the Trial Court=s
Judgment granting . . . Vikki Jansen=s
claim for intentional infliction of emotional distress, and the granting of . .
. Jansens= claim for invasion of privacy by intrusion on the
seclusion and nuisance and render judgment that [the Jansens] take nothing from
. . . Peterson.@  Our conclusion the evidence is legally and factually
sufficient to support an award of $32,000 for the Jansens= nuisance claim necessarily precludes us from
rendering judgment the Jansens take nothing. Addressing Peterson=s remaining issues is therefore not necessary to final
disposition of the appeal.  See Tex. R. App. P. 47.1.





[8]  The drain pipe was located on a utility and drainage
easement across Peterson=s property.  If the easement was dedicated to public
use, it could not be claimed by adverse possession.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 16.030(b) (Vernon 2002) (AA person may not acquire through adverse possession
any right or title to real property dedicated to public use.@); Ellis v. Jansing, 620 S.W.2d 569, 570 (Tex.
1981); Bowen v. Ingram, 896 S.W.2d 331, 335 (Tex. App.CAmarillo 1995, no writ).





[9]  We do not consider findings of fact as part of the
judgment.  See Tex. R. Civ. P. 299a (AFindings
of fact shall not be recited in a judgment. . . .  Findings of fact shall be
filed with the clerk of the court as a document or documents separate and apart
from the judgment.@).