**MG BUILDING MATERIALS, LTD., Appellant,**

v.

**MOSES LOPEZ CUSTOM HOMES, INC., Appellee.**

No. 04–04–00336–CV.

Court of Appeals of Texas, San Antonio.

July 27, 2005.

Rehearing Overruled Aug. 16, 2005.

David R. Montpas, Barry G. Benton, Glast, Phillips & Murray, San Antonio, for appellant.

Paul T. Curl, Paul T. Curl, a Professional Corporation, San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

MG Building Materials, Ltd. appeals a final judgment rendered against it in a suit by a homebuilder to foreclose the builder's statutory mechanic's lien and for damages based on breach of contract and promissory estoppel. Because we conclude the homebuilder had assigned all of its rights, privileges, and equities associated with the residential construction contract, we reverse the trial court's judgment as to the mechanic's lien and affirm the remainder of the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Douglas and Ana Gonzales (collectively, "Gonzales") entered into a new home contract with Moses Lopez Custom Homes, Inc. ("Lopez"), a custom homebuilder, to purchase a lot and construct a new home for the total sales price of $120,740.00.

The contract, although not dated, was executed on or about October 30, 2001, and specified that Lopez would complete all improvements in accordance with the homeowner's blueprints, would complete construction within eight months, and would be allowed six draws for working capital and construction overhead.

Gonzales subsequently selected MG Building Materials, Ltd. ("MG") to provide interim financing for the construction project. On November 20, 2001, Gonzales executed a series of documents. Gonzales signed a real estate lien note payable to MG in the amount of $143,740.00 to fund construction of the home. To secure the note, Gonzales signed a construction deed of trust and security agreement through which Gonzales transferred title to the home and real property to a trustee, with MG as the beneficiary. In addition, Gonzales executed a mechanic's lien contract with Lopez in the amount of $120,740.00, in which Lopez agreed "to furnish the materials and labor and to complete the Construction on the Property on or before the Completion Date." The mechanic's lien contract further provided, "[t]o secure payment of the Note, Owner [Gonzales] grants to Contractor [Lopez] a mechanic's, artisan's and materialman's lien on the Property and on all improvements and fixtures on the Property at any time." Finally, Lopez simultaneously executed an assignment of lien in favor of MG which transferred and assigned to "the Lender [MG] all of Contractor's [Lopez's] rights, privileges and equities under and by virtue of the indebtedness, lien and Mechanic's Lien Contract."

Lopez began construction on the Gonzales home in December 2001. Between

December 2001 and February 2003, Lopez submitted six draw requests to MG for payments to cover the completed stages of construction. All of these draw requests were processed and paid by MG. In March 2003, Lopez submitted his seventh and final draw request in the amount of $17,044.51 to cover the costs of completing the home. At the time the request was submitted, only $4,683.87 remained under the Gonzales' note. MG issued a check for $4,683.87, but gave it to Alamo Title Company to hold in escrow until Lopez and Gonzales reached an agreement on payment of the final draw request in excess of the funds available under the note.

Because of their pending divorce, Mr. and Mrs. Gonzales never obtained permanent financing to close on the home and defaulted on their note to MG. As a result, MG never released the escrowed $4,683.87 to Lopez. MG posted the Gonzales residence for foreclosure, and foreclosed its deed of trust lien on April 1, 2003. Prior to that foreclosure, however, on March 28, 2003, Lopez filed an "Original Contractor Affidavit of Claim for Mechanic's Lien" in the amount of its final draw request for $17,044.51. Lopez then filed suit on March 31, 2003, seeking foreclosure of the mechanic's lien and damages against MG for breach of contract and promissory estoppel. Prior to trial, Lopez successfully obtained a partial summary judgment foreclosing its lien against the removable improvements at the Gonzales' residence. Lopez and MG then proceeded to trial before a jury on the remaining issues. The trial court submitted special issues to the jury on breach of contract, promissory estoppel, and Lopez's attorney's fees. The jury answered all questions in favor of Lopez.

The trial court entered judgment in favor of Lopez incorporating both the partial summary judgment and the jury's verdict.

MG now appeals from that final judgment claiming the trial court erred in foreclosing Lopez's mechanic's lien because the lien had been assigned to MG, and challenging the sufficiency of the evidence to support the jury's verdict on breach of contract, promissory estoppel, and attorney's fees.

## PARTIAL SUMMARY JUDGMENT ON LIEN CLAIM

The first issue presented by MG is whether the trial court erred in granting partial summary judgment foreclosing Lopez's statutory lien and ordering the sale of eight removable items located on the Gonzales property. Because rendition of summary judgment involves a question of law, we review the trial court's decision de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex.1994). The movant for a traditional summary judgment must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on a ground expressly set forth in the motion. TEX.R. CIV. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex.1985). When reviewing a summary judgment, we take all evidence favorable to the non-movant as true. Nixon, 690 S.W.2d at 548–49. If the movant establishes its right to summary judgment as a matter of law, the burden then shifts to the non-movant to raise a fact issue that would preclude summary judgment. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.1979).

Lopez filed a traditional motion for partial summary judgment on the ground that it had perfected a statutory mechanic's and materialman's lien on the Gonzales residence and was entitled to foreclosure as a matter of law. In support of its motion, Lopez attached the affidavit of Moses Lopez, president of Moses Lopez Custom Homes, Inc., stating in relevant part that: (1) his company had entered into a "New

Home Contract" with Gonzales on October 30, 2001 to construct a residence in Atascosa County, Texas; (2) his company was owed $17,044.51 under the final draw request on the Gonzales residence (consisting of $12,044.51 in unreimbursed expenses and $5,000.00 in builder's fees); (3) he had signed and timely filed in the Atascosa County real property records an "Original Contractor Affidavit of Claim for Mechanic's Lien" on March 28, 2003; and (4) he was familiar with the Gonzales house and eight items were "installed at the Gonzales residence [that] can be removed without damage to the items themselves or to the residence."[2] A "Certified Contractor Affidavit of Claim" was also attached as summary judgment evidence.

■ Lopez's summary judgment motion, supporting affidavit, and affidavit of claim set forth its status as an original contractor under the Texas mechanic's lien statute. *See* TEX. PROP.CODE ANN. § 53.021(a)(2)(Vernon Supp.2004–2005). The summary judgment evidence further established a home construction contract between Lopez and Gonzales, work done by Lopez under the contract, the amount of payments outstanding, the location of the property, the supplying of qualified labor and materials by Lopez, and Lopez's perfection of the lien. *See id.;* TEX. PROP. CODE ANN. § 53.054 (Vernon Supp.2004–2005) (listing contents of affidavit required to perfect lien); *see also CVN Group, Inc. v. Delgado,* 95 S.W.3d 234, 248 (Tex.2002) (Hankinson, J. dissenting) (listing elements of proof to establish lien once suit is filed). Finally, the summary judgment affidavit of Moses Lopez established his familiarity with the Gonzales residence and the presence of eight specific items installed at the residence that could be removed

without damage. *See* TEX. PROP.CODE ANN. § 53.022(a) (Vernon 1995); *see also First Nat'l Bank in Dallas v. Whirlpool Corp.,* 517 S.W.2d 262, 266 (Tex.1974) (statutory lien claim extends to removable personal property that has been incorporated into structure). As our rules require, the summary judgment proof offered by Lopez is clear, positive and direct, is credible and free from contradictions and inconsistences, and could have been readily controverted by MG. TEX.R. CIV. P. 166a (c). Accordingly, Lopez met its initial burden of establishing its right to foreclose its statutory mechanic's lien against the removable improvements on the Gonzales property. The burden thus shifted to MG to raise a material fact issue that would preclude summary judgment. *Clear Creek,* 589 S.W.2d at 678.

In its response to Lopez's motion for summary judgment, MG challenged none of Lopez's summary judgment evidence. Instead, MG argued that Lopez had transferred and assigned to MG any and all lien rights securing its payment for work performed under the mechanic's lien contract. As summary judgment evidence, MG filed certified copies of the mechanic's lien contract between Gonzales and Lopez, and the assignment of lien signed by Lopez in favor of MG, which were both executed on November 20, 2001 and filed in the Atascosa County real property records.

■ An assignment generally transfers some right or interest from one person to another. *See Univ. of Tex. Med. Branch at Galveston v. Allan,* 777 S.W.2d 450, 452 (Tex.App.-Houston [14th Dist. ]1989, no writ); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 317(1) (1981) ("[a]n assignment of a right is a manifesta-

---

2. The eight items were listed as: air conditioning and heating units; interior doors; appliances; interior and exterior light fixtures; toilets; sinks and plumbing fixtures; ceiling fans; and mirrors.

tion of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished ... and the assignee acquires a right to such performance"). The right to assert a mechanic's and materialman's lien may be assigned. *See William J. Burns Int'l Detective Agency, Inc. v. Gen. Elec. Supply Co.*, 413 S.W.2d 775, 777 (Tex.Civ.App.-Texarkana 1967, no writ); *see also Wortham v. Trane Co.*, 432 S.W.2d 520, 520 (Tex.1968). When construing a written assignment, we apply the rules of interpretation and construction applicable to contracts. *Cadle Co. v. Henderson*, 982 S.W.2d 543, 546 (Tex.App.-San Antonio1998, no pet.). Our primary goal is to ascertain the intent of the parties as it is expressed in the written assignment. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). In order to accomplish that objective, we examine and consider the entire writing in an effort "to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 158 (1951). Under settled rules of contract construction, if the written assignment can be given a definite legal meaning, then it is not ambiguous and the court will construe the assignment as a matter of law. *Id.* at 157. Ambiguity is a question of law for the court to decide by examining the contract as a whole in the context of the circumstances present when the contract was executed. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.1983). When a contract contains an ambiguity, summary judgment is improper because the interpretation of the contract becomes a fact issue. *Id.*

Here, the parties agree that they entered into a written assignment and that the terms of the assignment are not ambiguous. The parties disagree, however, about the scope of the assignment. MG contends Lopez had no lien to foreclose against the Gonzales property because Lopez had transferred and assigned all of its lien rights to MG. Lopez responds that it only assigned the "contractual lien" created by the mechanic's lien contract, and retained a statutory lien. Lopez asserts that its foreclosure suit was based on a separate "statutory lien" that arose by operation of law and that was never assigned to MG.[3] By finding no genuine issues of material fact and rendering partial summary judgment in favor of Lopez, the trial court agreed with Lopez. For the reasons set forth below, we disagree and reverse the trial court's grant of partial summary judgment.

 The record before us establishes that Gonzales initially signed a contract with Lopez to purchase a lot and construct a new home for the total sales price of $120,740.00. This "New Home Contract" specifically contemplated that Gonzales would seek and obtain financing for the new home. Approximately three weeks later, Gonzales and Lopez signed a "Mechanic's Lien Contract" which set forth the terms of the financing to be provided by MG, and granted Lopez a "mechanic's, artisan's, and materialman's lien on the Property and on all improvements and fixtures on the Property at any time." On the same day, and before delivery of any material or commencement of any work, Lopez executed an "Assignment of Lien" in favor of MG. The assignment reads in pertinent part:

**3.** Lopez maintains that it sought to foreclose a "statutory lien" perfected on March 28, 2003, not the "contractual lien" described in the mechanic's lien contract which was assigned to MG. Lopez points out that its motion for partial summary judgment did not mention the mechanic's lien contract, instead relying solely on the new home contract.

[Lopez] ... has sold and conveyed, and does by these presents sell and convey to [MG] that certain Mechanic's Lien Contract ... and the liens and security interests against the following described real property ... together with all materials, supplies, equipment and fixtures incorporated and to be incorporated thereon whether located on the aforesaid real property or elsewhere, to secure the payment of all indebtedness owed under that certain Mechanic's Lien Note of even date herewith ... and [Lopez] does hereby TRANSFER AND ASSIGN unto [MG] all of [Lopez's] rights, privileges and equities under and by virtue of the indebtedness, lien and the Mechanic's Lien Contract.

The plain language of the assignment conveys to MG: (1) the mechanic's lien contract between Lopez and Gonzales; (2) "liens and security interests" against the Gonzales home and "all materials, supplies, equipment and fixtures incorporated and to be incorporated thereon." The assignment further transfers and assigns to MG all of Lopez's "rights, privileges and equities under and by virtue of the indebtedness, lien and the Mechanic's Lien Contract." The words used in the assignment are broad in scope, encompassing "all materials, supplies and fixtures," "incorporated and to be incorporated," and "all of Contractor's rights, privileges and equities." Accordingly, we hold that the intent of the parties as expressed in the written assignment was to transfer and assign to MG all lien rights that Lopez possessed by virtue of its status as an original contractor for the Gonzales home.

■ We further hold that Lopez can not avoid the effect of this broad assignment by arguing that it only assigned the lien created by the mechanic's lien contract, and did not assign its right to assert a statutory lien under the pre-existing new home contract. In order to establish a statutory lien, Lopez had to prove it provided labor or materials under a contract with the owner. *See* TEX. PROP.CODE ANN. § 53.021(a)(2). It is undisputed that both contracts at issue in this suit, the new home contract and the mechanic's lien contract, employed Lopez to construct the Gonzales residence. Both contracts involved the same new home construction, the same real property, the same contract price, and the same lien and indebtedness. When dealing with two documents comprising a single agreement, a court should read and construe them together. *Mem'l Med. Ctr. of East Texas v. Keszler,* 943 S.W.2d 433, 434 (Tex.1997); *see also Jones v. Kelley,* 614 S.W.2d 95, 98 (Tex.1981) (separate instruments executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument and construed together). It is further undisputed that at the time Lopez executed the assignment of lien in favor of MG, no work had begun on the Gonzales construction. Therefore, we conclude that when Lopez assigned to MG "all of Contractor's rights, privileges and equities under and by virtue of the indebtedness, lien and the Mechanic's Lien Contract," it intended to assign to MG whatever right it might have to assert a future lien claim associated with the construction of the Gonzales home, whether by virtue of the new home contract or the mechanic's lien contract. Accordingly, once it executed the assignment in favor of MG, Lopez no longer had the right to enforce a mechanic's or materialman's lien for its own benefit. *See Wortham,* 432 S.W.2d at 520 (laborer may perfect mechanic's lien after assignment, but lien only benefits assignee regardless of whether assignor was acting as agent of assignee). Because we conclude that Lopez assigned to MG all rights to assert a mechanic's and materialman's lien claim involving the con-

struction of the Gonzales home, we hold the trial court erred in granting partial summary judgment in favor of Lopez and ordering the foreclosure sale of the removable improvements. We therefore reverse the trial court's judgment to the extent that it orders foreclosure of Lopez's mechanic's and materialman's lien in the amount of $17,044.51, plus interest.[4]

### BREACH OF CONTRACT AND PROMISSORY ESTOPPEL

In its next four issues, MG complains the evidence is legally and factually insufficient to support the jury's findings of breach of contract and promissory estoppel. When a party not bearing the burden of proof on an issue challenges the legal sufficiency of the evidence, we view the evidence in the light most favorable to the jury's finding, disregarding all evidence and inferences to the contrary. *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex.2002). If more than a scintilla of evidence supporting the finding exists, we uphold the finding. *Id.* When reviewing a factual sufficiency challenge, we examine the entire record to determine whether the evidence supporting the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

 Both the breach of contract and promissory estoppel claims against MG were founded in part upon a letter written by MG's counsel, Barry Benton, in connection with the settlement of an unrelated lawsuit filed by Alfredo and C. Linda Garcia. MG argues on appeal that the court erred in admitting the settlement letter because it is not relevant to the issues in this lawsuit, and, alternatively, because it

is part of a settlement agreement and therefore inadmissible under Texas Rule of Evidence 408. TEX.R. EVID. 408 (evidence of compromise or offers of compromise are inadmissible to prove liability for or invalidity of the claim or its amount). MG further argues that, even if admissible, the letter standing alone is not a valid and enforceable contract, and MG was not obligated to fund Lopez's final draw request based on any promise stated in the letter because certain conditions precedent had not been met.

The subject letter, dated January 3, 2003, from MG's attorney to Lopez's attorney states in relevant part:

> In connection with the settlement by and between Alfredo G. Garcia and C. Linda Garcia ... and Moses Lopez Custom Homes, Inc. and MG Building Materials, Ltd., MG agrees, and will immediately inform Douglas and Ana Gonzalez (sic) ... in writing, that the foreclosure sales previously noticed by MG for January 7, 2003 will not occur, and that no such sales will occur prior to February 4, 2003.... MG further agrees to promptly process for payment any additional draw requests pertaining to the Gately and Gonzalez (sic) residences, and to pay such further requests within two business days after approval of each draw request by inspection.

 The letter is relevant and material to Lopez's claims in this lawsuit that MG agreed to promptly process and fund draw requests upon approval, and that MG failed to comply with that agreement. *See* TEX.R. EVID. 401 (relevant evidence is that which has a tendency to make the existence of any fact of consequence to the

---

4. Because we reverse this portion of the trial court's judgment, we do not address MG's seventh issue in which it argues the trial court's judgment violates the election of remedies doctrine and constitutes a double recovery.

determination of the action more or less probable than it would be without the evidence). The letter is therefore admissible under Rule 402. TEX.R. EVID. 402.

■■■■ The purpose of Rule 408 is to encourage settlement of disputed claims. *See State Farm Mut. Auto. Ins. Co. v. Wilborn,* 835 S.W.2d 260, 261 (Tex.App.-Houston [14th Dist.] 1992, orig. proceeding) (settlement offers are excluded to allow a party to "buy his peace and encourage settlement of claims outside the courthouse"). Under Rule 408, the parties to the Garcia lawsuit would be prevented from introducing the existence and terms of any proposed settlement agreement between them for the purpose of establishing a party's liability in the event the case proceeded to trial. TEX.R. EVID. 408; *see also Ford Motor Co. v. Leggat,* 904 S.W.2d 643, 649 (Tex.1995) (orig.proceeding). Settlement agreements and offers may be admissible for purposes other than establishment of liability, such as to demonstrate bias or prejudice of a party or witness, or, as here, to establish the existence of a promise or agreement made by a non-party to the settled lawsuit.[5] *See Ochs v. Martinez,* 789 S.W.2d 949, 959–60 (Tex.App.-San Antonio 1990, writ denied). The burden is on the party objecting to the evidence to show that it was not offered for some other valid purpose permitted by Rule 408. *Haney v. Purcell Co.,* 796 S.W.2d 782, 790 (Tex.App.-Houston [1st Dist.] 1990, writ denied). We review the trial court's determination that the evidence was offered for another valid reason, and was therefore not excluded by Rule 408, for abuse of discretion. *Tatum v. Progressive Polymers, Inc.,* 881 S.W.2d 835, 837 (Tex.App.-Tyler 1994, no writ).

Here, the settlement letter was offered to show that MG made an agreement to promptly process and pay Lopez's draw requests. It was not offered to show that MG made the agreement in recognition of its liability on Lopez's claims. Accordingly, the trial court did not abuse its discretion in determining that the letter was offered for a valid purpose, and therefore was not excluded by Rule 408.

■■■■ The case was submitted to the jury on alternative theories of breach of contract and promissory estoppel. The jury answered affirmatively on both. Therefore, we will affirm the judgment if the record includes sufficient evidence on either claim. *See, e.g., Regency Advantage, L.P. v. Bingo Idea–Watauga, Inc.,* 936 S.W.2d 275, 278 (Tex.1996). The elements of a breach of contract claim are: (1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *McLaughlin, Inc. v. Northstar Drilling Tech., Inc.,* 138 S.W.3d 24, 27 (Tex.App.-San Antonio 2004, no pet.). MG initially contends that the settlement letter does not represent a valid contract because it does not show acceptance by Lopez and because the letter was not signed by Lopez or its counsel. A valid and enforceable contract is formed by an offer, an acceptance, a meeting of the minds, and an expression of the terms with sufficient certainty so that there is no doubt regarding the parties' intentions. *Harris v. Balderas,* 27 S.W.3d 71, 77 (Tex.App.-San Antonio 2000, pet. denied). Consideration is also an essential element of any valid contract. *Copeland v. Alsobrook,* 3 S.W.3d 598, 604 (Tex.App.-San Antonio 1999, pet.

5. MG was a signatory to the settlement agreement between the Garcias and Lopez in the Garcias' lawsuit, but was not a party to the suit. As part of the settlement, Lopez agreed to release a lien against the Garcias' home and MG agreed to fund Lopez's outstanding and future draw requests on the Gately and Gonzales homes.

denied). At trial, the settlement letter was offered as evidence of MG's agreement to promptly process and fund Lopez's pending and future draw requests in exchange for Lopez's agreement to relinquish its lien against the Garcia property. A contract containing mutual obligations that has been reduced to writing and signed by one of the parties can be accepted by the non-signing party by their conduct, thus making it a binding agreement on both parties. *Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.*, 849 S.W.2d 380, 392 (Tex.App.-Houston [14th Dist.] 1993, writ denied); *see also Velasquez v. Schuehle*, 562 S.W.2d 1, 3 (Tex.Civ. App.-San Antonio 1977, no writ). Mr. Lopez testified that MG's commitment in the letter to process and fund his draw requests was very important to him because it allowed him to continue construction on the Gately and Gonzales residences with some expectation that he would be able to regain the losses he sustained on the Garcia home. He stated that he relied on MG's promise and would not have gone forward with completion of the Gately and Gonzales homes absent that agreement from MG. In addition, the jury heard testimony from Barry Benton, attorney for MG, that he anticipated, intended, and hoped that Lopez would rely on his agreement. Pursuant to the settlement letter, Lopez released its lien against the Garcia property and continued with the construction already underway on the Gately and Gonzales residences with the expectation that the costs would eventually be recovered by MG funding its draw requests. Likewise, MG funded Lopez's draw requests which were pending at the time of

the agreement. The terms of the agreement are straightforward and both parties' actions leave no doubt regarding their intent to be bound by the agreement. We conclude that the evidence of a valid and enforceable contract is legally and factually sufficient.

MG further argues that, even if there is sufficient evidence of a contract, MG was not obligated to comply with the agreement because the conditions precedent to its obligation had not been met. The process by which Lopez normally received payment for his work involved several steps. Lopez would complete a stage of construction and then, once it was completed, would submit a draw request to MG for payment of the completed work. MG would then order an inspection of the work that Lopez claimed to have completed. Following the inspection, the work also had to be approved by the homeowner, in this case Gonzales, before MG would fund Lopez's draw request. MG claims that the inspection and homeowner approval preconditions were never met with respect to Lopez's final draw request.

In Lopez's first amended petition, Lopez alleged that "[a]ll conditions precedent to this action have been performed or have occurred." In response, MG filed a general denial accompanied by special exceptions, affirmative defenses, and a counterclaim. MG, however, did not specifically deny that all conditions precedent had occurred; therefore, Lopez was not required to prove the occurrence of conditions precedent to MG's obligation. *See* Tex.R. Civ. P. 54.[6]

---

6. Nevertheless, the jury did hear testimony that Lopez had been advised by an MG employee that the inspection had in fact been completed and the final draw had been approved by Gonzales. Kevin Sullivan, MG's chief financial officer, testified that he had

issued the check for the remainder of the funds under the Gonzales note at the instruction of Mrs. Gonzales. Mrs. Gonzales testified that she was satisfied with Lopez's performance and construction of the home, and that she was prepared to try to come up with

Based on the record, we hold the evidence is both legally and factually sufficient to support the jury's finding that MG failed to comply with its agreement to pay construction draws on the Gonzales residence. Accordingly, we affirm that portion of the trial court's judgment awarding Lopez the sum of $4,683.87, plus interest, from MG based on breach of contract.[7]

## ATTORNEY'S FEES

In its sixth issue, MG challenges the trial court's award of attorney's fees to Lopez based on its contention that Lopez was not entitled to prevail on either its mechanic's lien claim or its suit for damages. We agree in part. The jury's verdict segregated the attorney's fees awarded to Lopez. The verdict reflects an award of attorney's fees of $16,320 on Lopez's lien claim; $8,160 on Lopez's claim for damages; and $2,000 for post-trial representation. Because we reverse the trial court's judgment with respect to foreclosure of Lopez's mechanic's lien, we also reverse the trial court's award of attorney's fees on the lien claim. *See State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex.1995). However, because we affirm Lopez's recovery of damages based on breach of contract, we also affirm the remaining attorney's fees awarded. Therefore, the trial court's judgment is reversed as to the award of $16,320 in attorney's fees, and affirmed as to the remaining attorney's fees awarded.

## AGREEMENT TO INDEMNIFY

In its eighth and final issue, MG contends that even if Lopez has any valid claims, Lopez is prevented from recovering on them pursuant to a provision in the assignment of lien stating that Lopez agrees to hold MG "harmless from any loss, claim, or expense" incurred in connection with Lopez's construction of the Gonzales home. Both MG and Lopez characterize the provision as an indemnity agreement. MG asserts that the indemnity provision includes any claims brought by Lopez against MG, while Lopez asserts the indemnity provision is not a release and only indemnifies MG against claims brought by third parties. We agree with Lopez.

An indemnity agreement is a promise by the indemnitor to safeguard or hold the indemnitee harmless against existing or future loss or liability, or both. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993); *see also Wallerstein v. Spirt*, 8 S.W.3d 774, 779 (Tex.App.-Austin 1999, no pet.); *Derr Constr. Co. v. City of Houston*, 846 S.W.2d 854, 858 (Tex.App.-Houston [14th Dist.] 1992, no writ). An indemnity provision does not apply to claims between the parties to the agreement, but obligates the indemnitor to protect the indemnitee against claims brought by third parties. *Derr*, 846 S.W.2d at 858. An indemnity agreement creates a potential cause of action in the indemnitee. *Dresser*, 853 S.W.2d at 508. A release, on the other hand, is an agreement by one party to surrender its own cause of action against the other party. *Id.; see also Lloyd v. Ray*, 606 S.W.2d 545, 547 (Tex.Civ.App.-

---

the additional money to pay Lopez the full amount he had requested in his final draw beyond what was available under the original note. Mrs. Gonzales testified that it was the circumstances of her divorce, not dissatisfaction with Lopez's performance, that prevented her from closing on the home. She also testified that she never told Kevin Sullivan not to fund Lopez's final draw request.

7. Because we find sufficient evidence of breach of contract, we need not reach MG's challenge to the sufficiency of the evidence on the promissory estoppel claim.

**64**

San Antonio 1980, writ ref'd n.r.e.). A release extinguishes any claim the releasor might have against the releasee without regard to the releasee's liability to third parties. *Derr*, 846 S.W.2d at 858. A release is designated as an affirmative defense and must be pled. TEX.R. CIV. P. 94; *Dresser*, 853 S.W.2d at 508. Typical indemnity language is "indemnify, save, protect, save/hold harmless." *Derr*, 846 S.W.2d at 859. Typical release language is "release, discharge, relinquish." *Id.*

The language used in the assignment of lien provision providing that Lopez agreed to "hold *MG* harmless" from any loss, claim, or expense arising out of construction of the Gonzales home constitutes an indemnity agreement, not a release; consequently, the provision did not release MG from liability on Lopez's claims. We overrule MG's eighth issue.

### CONCLUSION

Based on the foregoing analysis, we reverse the trial court's judgment granting foreclosure of Lopez's mechanic's and materialman's lien in the amount of $17,044.51, plus pre-and post-judgment interest, and the award of $16,320 in attorney's fees with respect to this claim. In all other respects, we affirm the trial court's judgment.