MEMORANDUM OPINION





No. 04-07-00531-CV





John
THOMAS,

Appellant





v.





John
GOODMAN d/b/a John Goodman's Tree Service,

Appellee





From the 216th Judicial District Court, Gillespie County, Texas

Trial Court No. 10809

Honorable Robert R. Barton, Judge Presiding





Opinion by: Phylis J. Speedlin, Justice





Sitting: Alma L. López, Chief
Justice

Phylis J. Speedlin,
Justice

Rebecca Simmons,
Justice





Delivered and Filed: July 2, 2008





AFFIRMED IN PART; REVERSED AND REMANDED IN PART

John Thomas appeals the trial court's judgment
ordering him to pay damages and attorney's fees to John Goodman d/b/a John
Goodman's Tree Service for breach of contract. In two issues, Thomas argues
that the evidence is legally and factually insufficient to support the jury's
findings. We affirm the judgment of the trial court in part, reverse the award
of attorney's fees, and remand the case to the trial court for a new trial on
attorney's fees. 





Background

In September of 2005, Thomas hired Goodman to service the trees located on
Thomas's ranch in Gillespie
 County. The parties
dispute exactly what services Goodman was hired to perform. Thomas maintains he
hired Goodman to perform ball moss eradication services on his century-old oak
trees. Goodman counters that he was hired to perform trimming, pruning,
topping, removal, and fertilizing of trees as described in a written agreement
dated September 18, 2005 and signed by the parties. The agreement contained a
price per tree based on size, but did not contain a total price. Small trees
were priced at $10 per tree, medium trees at $30, and large trees at $50 to
$150; fertilization was $5 per tree and the price of tree removal was to be
determined based on the size of the tree. On Monday, Goodman began work on Thomas's
property and at the end of the week, Goodman presented
Thomas with an invoice totaling $8,940: $4,805 for tree trimming, pruning, and
topping; $550 for tree removal; and $3,585 for tree fertilization. Thomas
disputed the total charge, arguing that not all 717 trees had been fertilized.
Thomas asked Goodman to remove the $3,585 fertilization charge and claims they
agreed that Thomas would immediately pay $5,000 to Goodman, as well as an
additional $2,500 when the project was completed to Thomas's satisfaction.
Goodman, however, maintains that he was "coerced" into accepting the
$5,000 as a draw on work performed and promised to return the next Monday to
complete the work as directed by Thomas. 

The following Monday, Goodman returned to the ranch to complete the work;
Thomas claims that Goodman called him later that day and asked that he
immediately come to the ranch to inspect the work and pay the additional
$2,500. Thomas claims he was unable to inspect the work that day, and refused
to pay the $2,500 before reviewing Goodman's work. Thomas further claims that
Goodman then began yelling over the phone and threatened to "drop every
tree on the ranch" if he did not receive a check that day. According to
Goodman, however, Thomas told him he was not going to pay because "no man
is worth more than $10 an hour." Thomas then stopped payment on the $5,000
check he had previously paid to Goodman, resulting in an overdraft on Goodman's
account. Subsequently, Thomas claims that when he returned to the ranch, he discovered
that several trees had open wounds, had not been fertilized, or had not been
removed as agreed. He then paid $5,895.67 to another tree service company to
complete the unfinished ball moss eradication project. In January of 2006,
Thomas discovered that Goodman had placed a mechanic's lien on his property.

Thereafter, Goodman sued Thomas, asserting claims for breach of written
contract, quantum meruit, common law fraud, and
breach of oral contract, and seeking damages in the amount of $11,260 as well
as attorney's fees. In response, Thomas pled the affirmative defenses of
duress, estoppel, fraud, and waiver, and also
counterclaimed for breach of contract and violation of the deceptive trade
practices act; Thomas also sought remedies related to the "fraudulent"
mechanic's lien filed by Goodman. The case was tried to a jury, who found that
an agreement existed between Thomas and Goodman and found in favor of Goodman
for $11,260. The jury further awarded attorney's fees to Goodman in the amount
of $26,776.38. Subsequently, Thomas filed a motion for new trial challenging
the legal and factual sufficiency of the evidence to support the jury's finding
that an agreement existed between the parties and also challenging the
sufficiency of the evidence to support the jury's award of attorney's fees
because Goodman never presented his claim to Thomas and because Goodman failed
to segregate his attorney's fees. The trial court denied Thomas's motion for
new trial.

On appeal, Thomas argues that the evidence is legally and factually
insufficient to support: 1) the jury's finding that a contract existed between
the parties, and 2) the jury's award of attorney's fees. We will discuss each
issue in turn.

Standard of Review

When an appellant attacks the legal sufficiency
of an adverse finding on an issue on
which he did not have the burden of proof, the appellant must demonstrate there
is no evidence to support the adverse finding. See Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex.
1983). We review the evidence in the light most favorable to the verdict giving
"credit [to] favorable evidence if reasonable jurors could, and disregard[ing] contrary evidence unless reasonable jurors could
not." City of Keller
v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). If
more than a scintilla of evidence supports the jury's finding, the no evidence
challenge fails. Wal-Mart Stores, Inc. v. Miller,
102 S.W.3d 706, 709 (Tex.
2003). When reviewing a factual sufficiency
challenge, we examine the entire record to determine whether the evidence supporting the finding is so
contrary to the overwhelming weight of the evidence as to
be clearly wrong and manifestly unjust. Cain v. Bain,
709 S.W.2d 175, 176 (Tex.
1986) (per curiam); MG Bldg. Materials, Ltd.
v. Moses Lopez Custom Homes, Inc., 179 S.W.3d 51, 60 (Tex.
App.--San Antonio 2005, pet. denied). In conducting this review, we do
not substitute our judgment for that of the jury, as they
are the sole judge of the credibility of the witnesses and the weight to be
given their testimony. City of Keller, 168 S.W.3d at 819, 821.

Discussion

Contract 

Thomas contends that the evidence is legally and factually insufficient to
support the jury's affirmative finding that an agreement existed between him
and Goodman. (1) 

Parties enter into a binding contract when the following elements exist: (1)
an offer; (2) an acceptance in strict compliance with the terms of the offer;
(3) a meeting of the minds; (4) each party's consent to the terms; and (5)
execution and delivery of the contract with the intent that it be mutual and
binding. Copeland v. Alsobrook,
3 S.W.3d 598, 604 (Tex. App.--San Antonio 1999, pet. denied); Buxani v. Nussbaum, 940 S.W.2d 350, 352 (Tex.
App.--San Antonio 1997, no writ). Thomas contests the third element,
arguing that there was no meeting of the minds with respect to the terms of the
contract because (1) the September 18, 2005 agreement did not contain a final
price and (2) there is a factual dispute as to what services Goodman was hired
to perform. When a meeting of the minds is the only element in dispute, the
existence of a contract is a question of fact. Buxani,
940 S.W.2d at 352. The determination of whether there
is a meeting of the minds is based upon objective standards of what the parties
said and did. Copeland, 3 S.W.3d at 604.

To create a binding, enforceable agreement, the parties must agree on all
the essential terms. T.O. Stanley Boot Co., Inc. v. Bank
of El Paso, 847 S.W.2d 218, 221 (Tex. 1992); America's
Favorite Chicken Co. v. Samaras, 929 S.W.2d 617, 622 (Tex. App.--San
Antonio 1996, writ denied). It is well established that parties may
agree to the material terms of a contract, and leave
other matters open for later negotiation; it is only when an essential term is
left open for future negotiation that no binding contract
exists. T.O. Stanley, 847 S.W.2d at 221; Komet v. Graves, 40 S.W.3d 596,
602 (Tex.
App.--San Antonio 2001, no pet.). 

There was ample evidence at trial to show that the parties did have a
meeting of the minds on the essential terms of the contract as set forth in the
September 18, 2005 written agreement. Thomas admitted that he agreed with
Goodman to enter into a contract for services on a per tree basis. He also
stated he intended to pay Goodman for the work he performed based on the size
of the tree (small, medium, or large) or number of trees to be fertilized.
Although the final contract price was not known by either party at the time the
written agreement was signed, that amount was readily determinable based on the
details provided within the written agreement. It is noteworthy that Thomas
initially paid $5,000 to Goodman for work performed under the agreement. Thomas
testified that he later stopped payment on the $5,000 check because Goodman did
not complete the work, not because the contract was invalid or because the
final amount owed could not be determined. Because the essential terms of the
contract were mutually agreed upon, and the final cost could be calculated from
known terms, we hold that the contract was sufficiently definite. See Fort Worth Indep. Sch. Dist. v. City of Fort Worth, 22 S.W.3d
831, 846 (Tex.
2000) (stating that a contract is legally binding when terms are sufficiently
definite to enable court to understand parties' obligations). 

Thomas also asserts that no meeting of the minds occurred because a factual
dispute existed as to the particular services he hired Goodman to perform.
Thomas testified that he hired Goodman to perform ball moss eradication, yet
Goodman testified that he does not perform and is not qualified to perform ball
moss eradication. The September 18, 2005 agreement signed by the parties does
not mention ball moss eradication, but specifies that trees will be trimmed,
pruned, topped, removed, and fertilized. Again, whether a meeting of the minds
existed is a question of fact to be determined by the trier
of fact. Buxani, 940
S.W.2d at 352. Here, the jury was free to believe Goodman's testimony
over Thomas's, and to find that the parties agreed that the trees would be
serviced in accordance with the terms provided in the September 18, 2005
agreement. See
 City of Keller,
168 S.W.3d at 819 (a jury confronted with conflicting evidence may choose
to believe one witness and disbelieve others and may resolve inconsistencies in
the testimony of any witness). Thus, we cannot hold that the evidence of a
valid contract between Thomas and Goodman was legally insufficient. Moreover,
the evidence supporting the existence of a valid contract was not so against
the great weight and preponderance of the evidence as to be clearly wrong and
unjust. Thomas's first issue is overruled. 

Attorney's Fees 

Thomas next argues Goodman did not properly present his claim for breach of
contract, and is therefore not entitled to attorney's fees on that claim under
Chapter 38 of the Texas Civil Practice and Remedies Code. Section 38.001 provides that a person may recover
reasonable attorney's fees on a
claim based on an oral or written contract. Tex. Civ. Prac. &
Rem. Code Ann. § 38.001(8) (Vernon
1997). To recover attorney's fees
under section 38.002,
the claimant must comply with the following requirements: 1) the claimant must
be represented by an attorney; 2) the claimant must
present the claim to the opposing party or to a duly authorized agent of the
opposing party; and 3) payment for the just amount owed must not have been
tendered within thirty days of presentment. Tex. Civ. Prac. & Rem. Code Ann. §
38.002 (Vernon 1997); see Harrison
v. Gemdrill Intern., Inc., 981 S.W.2d
714, 719 (Tex. App.--Houston [1st Dist.] 1998, pet. denied). Presentment
of the claim is required to provide the other party with an opportunity to pay
the claim before incurring an obligation for attorney's fees. Harrison, 981 S.W.2d at
719; Jones v. Kelley, 614 S.W.2d 95, 100 (Tex. 1981). No particular form of presentment is required, and it may be written or oral. Harrison, 981 S.W.2d at 719.
"[A]ll that is necessary is that a party show that its assertion of a debt or claim and a
request for compliance was made to the opposing party, and the opposing party refused
to pay the claim." Standard Constructors, Inc. v.
Chevron Chem. Co., Inc., 101 S.W.3d 619, 627 (Tex. App.--Houston
[1st Dist.] 2003, pet. denied). Here, the record contains a letter dated
December 16, 2005, which was sent by Goodman's attorney to Thomas demanding
payment of $11,260 for services rendered by Goodman. Accordingly, we hold that
the claim for attorney's fees was sufficiently presented for purposes of
section 38.002. 

We next determine whether Goodman was required to segregate attorney's fees
between his breach of contract and tort causes of action. In Tony Gullo Motors I, L.P. v. Chapa, the Texas
Supreme Court held that "if any attorney's fees relate solely to a claim
for which such fees are unrecoverable, a claimant must segregate recoverable
from unrecoverable fees." 212 S.W.3d 299, 313 (Tex. 2006). It is
only when legal services advance both recoverable and unrecoverable claims that
the services are so inextricably intertwined that the associated fees need not
be segregated. Id. at 313-14. Thus, the general duty to segregate fees
applies, unless a party meets its burden of establishing that the same discrete
legal services were rendered with respect to both a recoverable and
unrecoverable claim. Chapa, 212 S.W.3d at 314; Hong
Kong Development, Inc. v. Nguyen, 229 S.W.3d 415, 455 (Tex. App.--Houston [1st
Dist.] 2007, no pet.). Under Chapa, the determining factor as
to whether fees must be segregated is the type of legal services rendered with
respect to the particular claims, not simply the manner of pleading or the type
of claim pled. Chapa, 212 S.W.3d at 313-14.

The jury awarded Goodman the total amount of fees sought based on two
billing statements detailing the basis for the fees requested by date, time
spent, and task accomplished. Several of the time entries appear clearly
unrelated to the breach of contract action, such as drafting pleadings for
common law fraud. Although the fraud claim stems from the same set of facts as
the breach of contract claim, Chapa clarified that intertwined facts
alone are insufficient to excuse segregation. See Chapa, 212 S.W.3d at
313-14 (disavowing prior rule suggesting that a common set of underlying facts
necessarily makes all claims arising therefrom
"inseparable" and thus all legal fees recoverable). Because the
jury's award of attorney's fees included time spent on matters other than the
breach of contract action, segregation of fees is required. Id. 

Further, Goodman's attorney provided no testimony that all of the work he
performed on Goodman's behalf was so "inextricably intertwined" with
the breach of contract action that the fees could not be segregated, nor did he
testify regarding what percentage of his time was spent solely on the breach of
contract action. See Nguyen, 229 S.W.3d at 455 (party seeking
attorney's fees bears burden of demonstrating that exception to duty to
segregate fees applies). Because Goodman failed to present any evidence
supporting an exception, segregation of fees is required. Accordingly, the
trial court erred in awarding Goodman attorney's fees for the total number of
hours spent on the case. On this record, we must reverse the judgment of the
trial court as it relates to attorney's fees and remand the cause for a new
trial on attorney's fees. See A.G. Edwards & Sons, Inc. v. Beyer,
235 S.W.3d 704, 710 (Tex. 2007); see also Nguyen, 229 S.W.3d at 455-56
("When an appellate court sustains a challenge that attorney's fees were
not properly segregated, the remedy is to sever that portion of the judgment
awarding attorney's
fees and to remand the cause for the issue to be relitigated.").
On remand, the standard established by the Texas Supreme Court in Chapa for segregating attorney's fees will apply. See
Chapa, 212 S.W.3d at 313-14. 

Conclusion

We affirm the judgment against Thomas awarding Goodman damages in the amount
of $11,260 for breach of contract; we reverse the award of attorney's fees and
remand the cause to the trial court for recalculation of attorney's fees. 





Phylis J. Speedlin, Justice

1. The jury charge asked the jury the following relevant
questions:





Question 1: Did John Goodman d/b/a John Goodman's Tree Service and John
Thomas agree that John Goodman would trim, prune, fertilize, and remove trees
on John Thomas' property for a calculable amount?

Answer: Yes.

Instructions: To form a valid contract, the parties must have the same
understanding of the subject matter of the contract and all its essential
terms. To be enforceable, a contract must be reasonably definite and certain. 

Question 2: Did John Goodman d/b/a John Goodman's Tree Service fail to
comply with the agreement?

Answer: No.

Question 3: Did John Thomas fail to comply with the agreement by not paying
for the agreed services rendered?

Answer: Yes.

Question 4: Was John Thomas' failure to comply excused?

Answer: No.