



# MEMORANDUM OPINION

No. 04-07-00531-CV

John **THOMAS**,
Appellant

v.

John **GOODMAN** d/b/a John Goodman's Tree Service,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 10809
Honorable Robert R. Barton, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:        Alma L. López, Chief Justice
               Phylis J. Speedlin, Justice
               Rebecca Simmons, Justice

Delivered and Filed:   July 2, 2008

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

John Thomas appeals the trial court's judgment ordering him to pay damages and attorney's fees to John Goodman d/b/a John Goodman's Tree Service for breach of contract.  In two issues, Thomas argues that the evidence is legally and factually insufficient to support the jury's findings. We affirm the judgment of the trial court in part, reverse the award of attorney's fees, and remand the case to the trial court for a new trial on attorney's fees.

**BACKGROUND**

In September of 2005, Thomas hired Goodman to service the trees located on Thomas's ranch in Gillespie County. The parties dispute exactly what services Goodman was hired to perform. Thomas maintains he hired Goodman to perform ball moss eradication services on his century-old oak trees. Goodman counters that he was hired to perform trimming, pruning, topping, removal, and fertilizing of trees as described in a written agreement dated September 18, 2005 and signed by the parties. The agreement contained a price per tree based on size, but did not contain a total price. Small trees were priced at $10 per tree, medium trees at $30, and large trees at $50 to $150; fertilization was $5 per tree and the price of tree removal was to be determined based on the size of the tree. On Monday, Goodman began work on Thomas's property and at the end of the week, Goodman presented Thomas with an invoice totaling $8,940: $4,805 for tree trimming, pruning, and topping; $550 for tree removal; and $3,585 for tree fertilization. Thomas disputed the total charge, arguing that not all 717 trees had been fertilized. Thomas asked Goodman to remove the $3,585 fertilization charge and claims they agreed that Thomas would immediately pay $5,000 to Goodman, as well as an additional $2,500 when the project was completed to Thomas's satisfaction. Goodman, however, maintains that he was "coerced" into accepting the $5,000 as a draw on work performed and promised to return the next Monday to complete the work as directed by Thomas.

The following Monday, Goodman returned to the ranch to complete the work; Thomas claims that Goodman called him later that day and asked that he immediately come to the ranch to inspect the work and pay the additional $2,500. Thomas claims he was unable to inspect the work that day, and refused to pay the $2,500 before reviewing Goodman's work. Thomas further claims that Goodman then began yelling over the phone and threatened to "drop every tree on the ranch"

if he did not receive a check that day. According to Goodman, however, Thomas told him he was not going to pay because "no man is worth more than $10 an hour." Thomas then stopped payment on the $5,000 check he had previously paid to Goodman, resulting in an overdraft on Goodman's account. Subsequently, Thomas claims that when he returned to the ranch, he discovered that several trees had open wounds, had not been fertilized, or had not been removed as agreed. He then paid $5,895.67 to another tree service company to complete the unfinished ball moss eradication project. In January of 2006, Thomas discovered that Goodman had placed a mechanic's lien on his property.

Thereafter, Goodman sued Thomas, asserting claims for breach of written contract, quantum meruit, common law fraud, and breach of oral contract, and seeking damages in the amount of $11,260 as well as attorney's fees. In response, Thomas pled the affirmative defenses of duress, estoppel, fraud, and waiver, and also counterclaimed for breach of contract and violation of the deceptive trade practices act; Thomas also sought remedies related to the "fraudulent" mechanic's lien filed by Goodman. The case was tried to a jury, who found that an agreement existed between Thomas and Goodman and found in favor of Goodman for $11,260. The jury further awarded attorney's fees to Goodman in the amount of $26,776.38. Subsequently, Thomas filed a motion for new trial challenging the legal and factual sufficiency of the evidence to support the jury's finding that an agreement existed between the parties and also challenging the sufficiency of the evidence to support the jury's award of attorney's fees because Goodman never presented his claim to Thomas and because Goodman failed to segregate his attorney's fees. The trial court denied Thomas's motion for new trial.

On appeal, Thomas argues that the evidence is legally and factually insufficient to support: 1) the jury's finding that a contract existed between the parties, and 2) the jury's award of attorney's fees. We will discuss each issue in turn.

## STANDARD OF REVIEW

When an appellant attacks the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate there is no evidence to support the adverse finding. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983). We review the evidence in the light most favorable to the verdict giving "credit [to] favorable evidence if reasonable jurors could, and disregard[ing] contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). If more than a scintilla of evidence supports the jury's finding, the no evidence challenge fails. *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003). When reviewing a factual sufficiency challenge, we examine the entire record to determine whether the evidence supporting the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *MG Bldg. Materials*, *Ltd. v. Moses Lopez Custom Homes*, *Inc.*, 179 S.W.3d 51, 60 (Tex. App.—San Antonio 2005, pet. denied). In conducting this review, we do not substitute our judgment for that of the jury, as they are the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller,* 168 S.W.3d at 819, 821.

**DISCUSSION**

*Contract*

Thomas contends that the evidence is legally and factually insufficient to support the jury's affirmative finding that an agreement existed between him and Goodman.[1] Parties enter into a binding contract when the following elements exist: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied); *Buxani v. Nussbaum,* 940 S.W.2d 350, 352 (Tex. App.—San Antonio 1997, no writ). Thomas contests the third element, arguing that there was no meeting of the minds with respect to the terms of the contract because (1) the September 18, 2005 agreement did not contain a final price and (2) there is a factual dispute as to what services Goodman was hired to perform. When a meeting of the minds is the only element in dispute, the existence of a contract is a question of fact. *Buxani*, 940

---

[1] The jury charge asked the jury the following relevant questions:

| | |
|---|---|
| Question 1: | Did John Goodman d/b/a John Goodman's Tree Service and John Thomas agree that John Goodman would trim, prune, fertilize, and remove trees on John Thomas' property for a calculable amount? |
| Answer: | Yes. |
| Instructions: | To form a valid contract, the parties must have the same understanding of the subject matter of the contract and all its essential terms. To be enforceable, a contract must be reasonably definite and certain. |
| Question 2: | Did John Goodman d/b/a John Goodman's Tree Service fail to comply with the agreement? |
| Answer: | No. |
| Question 3: | Did John Thomas fail to comply with the agreement by not paying for the agreed services rendered? |
| Answer: | Yes. |
| Question 4: | Was John Thomas' failure to comply excused? |
| Answer: | No. |

S.W.2d at 352. The determination of whether there is a meeting of the minds is based upon objective standards of what the parties said and did. *Copeland*, 3 S.W.3d at 604.

To create a binding, enforceable agreement, the parties must agree on all the essential terms. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex. 1992); *America's Favorite Chicken Co. v. Samaras,* 929 S.W.2d 617, 622 (Tex. App.—San Antonio 1996, writ denied). It is well established that parties may agree to the material terms of a contract, and leave other matters open for later negotiation; it is only when an essential term is left open for future negotiation that no binding contract exists. *T.O. Stanley,* 847 S.W.2d at 221; *Komet v. Graves,* 40 S.W.3d 596, 602 (Tex. App.—San Antonio 2001, no pet.).

There was ample evidence at trial to show that the parties did have a meeting of the minds on the essential terms of the contract as set forth in the September 18, 2005 written agreement. Thomas admitted that he agreed with Goodman to enter into a contract for services on a per tree basis. He also stated he intended to pay Goodman for the work he performed based on the size of the tree (small, medium, or large) or number of trees to be fertilized. Although the final contract price was not known by either party at the time the written agreement was signed, that amount was readily determinable based on the details provided within the written agreement. It is noteworthy that Thomas initially paid $5,000 to Goodman for work performed under the agreement. Thomas testified that he later stopped payment on the $5,000 check because Goodman did not complete the work, not because the contract was invalid or because the final amount owed could not be determined. Because the essential terms of the contract were mutually agreed upon, and the final cost could be calculated from known terms, we hold that the contract was sufficiently definite. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000) (stating that a

contract is legally binding when terms are sufficiently definite to enable court to understand parties' obligations).

Thomas also asserts that no meeting of the minds occurred because a factual dispute existed as to the particular services he hired Goodman to perform. Thomas testified that he hired Goodman to perform ball moss eradication, yet Goodman testified that he does not perform and is not qualified to perform ball moss eradication. The September 18, 2005 agreement signed by the parties does not mention ball moss eradication, but specifies that trees will be trimmed, pruned, topped, removed, and fertilized. Again, whether a meeting of the minds existed is a question of fact to be determined by the trier of fact. *Buxani*, 940 S.W.2d at 352. Here, the jury was free to believe Goodman's testimony over Thomas's, and to find that the parties agreed that the trees would be serviced in accordance with the terms provided in the September 18, 2005 agreement. *See City of Keller,* 168 S.W.3d at 819 (a jury confronted with conflicting evidence may choose to believe one witness and disbelieve others and may resolve inconsistencies in the testimony of any witness). Thus, we cannot hold that the evidence of a valid contract between Thomas and Goodman was legally insufficient. Moreover, the evidence supporting the existence of a valid contract was not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Thomas's first issue is overruled.

### *Attorney's Fees*

Thomas next argues Goodman did not properly present his claim for breach of contract, and is therefore not entitled to attorney's fees on that claim under Chapter 38 of the Texas Civil Practice and Remedies Code. Section 38.001 provides that a person may recover reasonable attorney's fees on a claim based on an oral or written contract. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 1997). To recover attorney's fees under section 38.002, the claimant must comply with the

following requirements: 1) the claimant must be represented by an attorney; 2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and 3) payment for the just amount owed must not have been tendered within thirty days of presentment. TEX. CIV. PRAC. & REM. CODE ANN. § 38.002 (Vernon 1997); *see Harrison v. Gemdrill Intern., Inc.*, 981 S.W.2d 714, 719 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). Presentment of the claim is required to provide the other party with an opportunity to pay the claim before incurring an obligation for attorney's fees. *Harrison*, 981 S.W.2d at 719; *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981). No particular form of presentment is required, and it may be written or oral. *Harrison*, 981 S.W.2d at 719. "[A]ll that is necessary is that a party show that its assertion of a debt or claim and a request for compliance was made to the opposing party, and the opposing party refused to pay the claim." *Standard Constructors, Inc. v. Chevron Chem. Co., Inc.*, 101 S.W.3d 619, 627 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Here, the record contains a letter dated December 16, 2005, which was sent by Goodman's attorney to Thomas demanding payment of $11,260 for services rendered by Goodman. Accordingly, we hold that the claim for attorney's fees was sufficiently presented for purposes of section 38.002.

We next determine whether Goodman was required to segregate attorney's fees between his breach of contract and tort causes of action. In *Tony Gullo Motors I, L.P. v. Chapa*, the Texas Supreme Court held that "if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." 212 S.W.3d 299, 313 (Tex. 2006). It is only when legal services advance both recoverable and unrecoverable claims that the services are so inextricably intertwined that the associated fees need not be segregated. *Id.* at 313-14. Thus, the general duty to segregate fees applies, unless a party meets its burden of establishing that the same discrete legal services were rendered with respect to both a recoverable

and unrecoverable claim. *Chapa*, 212 S.W.3d at 314; *Hong Kong Development, Inc. v. Nguyen*, 229 S.W.3d 415, 455 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Under *Chapa*, the determining factor as to whether fees must be segregated is the type of legal services rendered with respect to the particular claims, not simply the manner of pleading or the type of claim pled. *Chapa*, 212 S.W.3d at 313-14.

The jury awarded Goodman the total amount of fees sought based on two billing statements detailing the basis for the fees requested by date, time spent, and task accomplished. Several of the time entries appear clearly unrelated to the breach of contract action, such as drafting pleadings for common law fraud. Although the fraud claim stems from the same set of facts as the breach of contract claim, *Chapa* clarified that intertwined facts alone are insufficient to excuse segregation. *See Chapa*, 212 S.W.3d at 313-14 (disavowing prior rule suggesting that a common set of underlying facts necessarily makes all claims arising therefrom "inseparable" and thus all legal fees recoverable). Because the jury's award of attorney's fees included time spent on matters other than the breach of contract action, segregation of fees is required. *Id.*

Further, Goodman's attorney provided no testimony that all of the work he performed on Goodman's behalf was so "inextricably intertwined" with the breach of contract action that the fees could not be segregated, nor did he testify regarding what percentage of his time was spent solely on the breach of contract action. *See Nguyen,* 229 S.W.3d at 455 (party seeking attorney's fees bears burden of demonstrating that exception to duty to segregate fees applies). Because Goodman failed to present any evidence supporting an exception, segregation of fees is required. Accordingly, the trial court erred in awarding Goodman attorney's fees for the total number of hours spent on the case. On this record, we must reverse the judgment of the trial court as it relates to attorney's fees and remand the cause for a new trial on attorney's fees. *See A.G. Edwards & Sons, Inc. v. Beyer*,

235 S.W.3d 704, 710 (Tex. 2007); *see also Nguyen,* 229 S.W.3d at 455-56 ("When an appellate court sustains a challenge that attorney's fees were not properly segregated, the remedy is to sever that portion of the judgment awarding attorney's fees and to remand the cause for the issue to be relitigated."). On remand, the standard established by the Texas Supreme Court in *Chapa* for segregating attorney's fees will apply. *See Chapa*, 212 S.W.3d at 313-14.

### CONCLUSION

We affirm the judgment against Thomas awarding Goodman damages in the amount of $11,260 for breach of contract; we reverse the award of attorney's fees and remand the cause to the trial court for recalculation of attorney's fees.


Phylis J. Speedlin, Justice